## Cacchione v. Hagan & Company, Appellant.

*Negligence—Master and servant—Fall of stone block—Assumption of risk—Judgment for defendant n. o. v.*

In an action to recover damages for injuries sustained by plaintiff in consequence of the fall upon his foot of a block of granite which was being chiseled into a mill stone, where it appeared that plaintiff in assisting a fellow workman to place the block in a proper position had failed to make it fast with props and braces, or to make secure the foundation upon which it rested, although he was a skilled workman and knew how such blocks could be secured in place, he must be held to have assumed the risk which caused the accident and could not recover therefor.

Argued Jan. 8, 1915. Appeal, No. 249, Jan. T., 1914, by defendant, from judgment of C. P. No. 5, Philadelphia Co., June T., 1910, No. 2450, on verdict for plaintiff in case of Salvatore Cacchione v. John Hagan, trading as John Hagan & Company. Before POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before STAAKE, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $4,000 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*F. B. Bracken,* of *Loughlin & Bracken,* for appellant. —There was no evidence of negligence: Welch v. Carlucci Stone Co., 215 Pa. 34.

The plaintiff was guilty of contributory negligence: Bowen v. Pennsylvania R. R. Co., 219 Pa. 405.

The plaintiff voluntarily assumed the risks of his employment: Marsh v. Chickering, 101 N. Y. 396, 5 N. E. Repr. 56; Corcoran v. Milwaukee Gas Light Co., 81 Wis. 191, 51 N. W. Repr. 328; Meador v. Lake Shore & Michigan Southern Ry. Co., 138 Ind. 290, 37 N. E. Repr. 721; Marean v. New York, Susquehanna & Western R. R. Co., 167 Pa. 220.

*J. Frederick Martin,* for appellee.—The place where plaintiff was working was rendered unsafe by reason of the chips of stone on the floor: Toward v. Meadow Lands Coal Co., 229 Pa. 553; Schiglizzo v. Dunn, 211 Pa. 253; Lillie v. American Car & Foundry Co., 209 Pa. 161; Reed v. American Dyewood Co., 231 Pa. 431.

The plaintiff was not guilty of contributory negligence: Penna. R. R. Co. v. Zink, 126 Pa. 288; Denning v. Midvale Steel Co., 192 Pa. 182.

The question whether or not plaintiff assumed the risk of what occurred was for the jury: Patterson v. Pittsburgh & Connellsville R. R. Co., 76 Pa. 389.

OPINION BY MR. JUSTICE STEWART, April 12, 1915:

The accident by which the plaintiff, an experienced stonecutter, was injured, occurred while he was engaged in his proper place and at his proper work in the stone

cutting establishment of the defendant. The place where he was at work was an open shed without other floor than the natural surface provided. He had been working for some days previous to the accident on a large block of granite, out of which he was to chisel a mill stone five and one-half feet in diameter, eighteen inches in thickness and round like a wheel. He had completed the sides and circumference before the accident occurred, and had lowered the stone from its upright position to the floor in order the more conveniently to drill the hole in the centre. In this same shed another employee was at work upon a block of granite of corresponding size to the same end. The work of chiseling the sides of the second stone had been completed, and the stone had been lifted to an upright position to admit chiseling the outer rim of the wheel. As that particular work progressed the wheel was turned from time to time so as to expose to the workman the unfinished part. It was set upon short boards or planks running lengthwise and forming a kind of track upon which it could more readily be turned. These boards or planks rested on a bed of granite chippings or spalls, which had accumulated and covered the entire floor of the shed. On the morning of the accident a further turning of this stone or wheel was required, and the workman engaged thereon called to his assistance the plaintiff and a laborer there engaged. Between them the wheel was turned until it rested within three feet of the stone on which the plaintiff was at work, and where it was "bankered," that is, made fast in its place so far as was thought necessary to admit of it being worked upon. The bankering in this case consisted in the plaintiff putting "a block in the back of the stone," and nothing more. The plaintiff testified that after the stone had been so placed he remained there several minutes; that having satisfied himself that it was sufficiently bankered he turned to resume his own work, and had already reached it when the upright stone fell forward and by the fall crushed one of his feet. The negligence charged was

failure to provide a reasonably safe place for plaintiff to work, "inasmuch as defendant permitted the spalls or rough chips or blocks of waste stone to accumulate and lie about the place until the entire yard was covered with debris of this character, from a few inches to several feet in thickness or depth; . . . . . . that such was the condition of the place where plaintiff was working, and where they, the defendants, set on edge a huge stone, several feet in height, with a narrow base with only one and a half feet, on a precarious foundation, composed of rough, uneven stones, with nothing to support it from either side, and so close to place where plaintiff was working, that he was injured by its falling." The trial resulted in a verdict for the plaintiff. A motion for judgment non obstante was refused, and judgment was entered on the verdict.

We find nothing in the evidence even tending to show that defendant had anything whatever to do with placing this stone in the position it occupied just before it fell. The plaintiff himself testified that "it is for the man who works on the stone to set it up to suit himself. . . . . . that he tells them—those upon whom he has a right to call for assistance—where to place the stone, and it is placed in that position." The plaintiff was one of those who assisted in placing the stone where it was, and no suggestion ever came from him that it was in dangerous proximity to the place where he was working, for the very sufficient reason, as he testified, that he thought the stone sufficiently bankered and in no danger of falling. This he testified to with full knowledge of the fact that the boards or planks underneath the stone rested on the spalls or chippings. The evidence makes it very clear that this stone, though resting on a foundation of spalls and chippings, did not fall for this reason, but because it lacked those supports which reasonable care and prudence under the circumstances would have suggested, props and braces. As explained by a witness called by plaintiff, a cut stone contractor of large experience in this business, the resting place of such a stone as this is

of minor importance so far as safety is concerned; its stability depending rather upon the manner in which it is braced and propped in the place where it rests, and it was to the lack of these supports that this witness refers the accident. Any one can understand that such a stone as this was, resting as it did upon a base of loose granite chippings, would require bracing and propping more than one resting upon a smooth solid base. There was nothing in the place, so far as the evidence shows, that made it unsafe to keep a stone of the shape and size of this in an upright position, providing ordinary care was used in giving it support. If props and braces were necessary to this end, the duty of the employer extended no further than to provide these, and there is nothing in the evidence to show that he failed in this regard. It was no part of his duty to superintend the work of these two experienced workmen, and to see that the stone was placed by them in a position of safety after each turn of the wheel was made. This plaintiff was as good a judge of the safety of the place where the stone rested as was the defendant; if its place suggested danger, it was a danger which he had intelligent knowledge and ability to estimate by reason of his long experience.

But aside from this: if reasonable care and prudence called for the use of props and braces, it was only because the layer of loose spalls and chippings to the depth of eight or nine inches made an insecure foundation. All witnesses agree that had the stone rested on the smooth, solid earth, the accident would not have happened. Whose fault was it that it did not so rest? The selection of the place where the stone was to rest was for the workman who had the stone in charge; so with respect to the manner of moving it from one point to another, and equally so in respect to banking and securing it where it rested. From all that appears in the case the removal of the spalls and chippings from a space sufficient to allow the stone to rest upon solid earth, would have required but little time and but little effort. Nothing ap-

pears in the case showing that it would have been attended with the slightest difficulty. If it was too much to expect of skilled workmen that they would do this,—and the plaintiff so expresses himself in his testimony, notwithstanding he admits that he had done as much in bankering his stone when placed in an upright position, and his witness, Maguire, testifies that as a workman he always cleared away the spalls and chips when he was bankering a stone,—it was certainly not too much to expect that these experienced workmen would call upon the laborers who were assisting at the time to do it for them, when they knew its importance. In Pittsburgh & Connellsville R. R. v. Sentmeyer, 92 Pa. 276, an instruction had been given in the court below to the effect that the railroad was bound to have all the bridges crossing its road of sufficient height, that whether its employees were careful or negligent no damage could result to them therefrom. In reviewing the case, this court said of the instruction, Mr. Justice GORDON speaking for the court, "What is the logical result of a doctrine such as this? Is it not, that the company must not only guard its servants from probable but also from possible dangers, and that it must place no dependence on their care and skill, even in the matter of their own preservation and personal safety? That it must provide against their very negligence and become an insurer of their limbs and lives? We need not say this will not do; that neither natural nor artificial persons can bear a burden such as this, neither ought they so to do. When men are hired something must be predicated of their judgment and prudence, and hence, when the employer furnishes them with tools and appliances, which, though not the best possible, may, by ordinary care, be used without danger, he has discharged his duty and is not responsible for accidents."

Another feature of the case remains to be referred to. Plaintiff had worked in this shed for a year, barring an interval of three months. The shed was in practically

the same condition as to the floor when the accident occurred as it was when he first went there; the work conducted during this period was of the same kind; it does not appear that a single stone had fallen during this period; and no suggestion had been made to the employer that the condition of the floor endangered the safety of the employees. Except as notice to this effect was given to the employer, the employee must be held to have assumed such risks of his employment as were under his own observation, and the risk in this case admittedly was one of which the plaintiff was fully advised. The plaintiff testified that he had complained to the defendant of the accumulation of spalls on the floor of the shed, and that the defendant had promised that he would have them removed. He made the complaint a few days before the accident occurred, and the complaint he made was that around the place where he worked "it was very dirty." The evidence will be looked through in vain to find even a suggestion from the plaintiff that the place was unsafe in any respect. Under such circumstances the plaintiff must be held to have assumed the risk of his employment. We find nothing in the evidence to take this case out of the operation of this general rule.

To conclude: the evidence is insufficient to charge the defendant with any negligence to which the plaintiff's injury can be referred as the proximate cause. Assuming that but for conditions in the shed with respect to the spalls, the accident would not have happened, the evidence shows entire familiarity with such conditions on the part of the plaintiff, and want of ordinary care on his part to avoid the danger; and further, that he assumed the risk of his employment. It results that the defendant's motion for judgment n. o. v. should have prevailed. The judgment is reversed, and judgment is now entered for the defendant.