Plaintiff sued under the Federal Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, 45 USCA 51 et seq. After a trial in which he got a verdict, a new *Page 437 
trial was granted, as the learned trial judge explained, because he had submitted to the jury defendant's liability for ". . . failure to provide adequate equipment for the work; failure to provide sufficient help, and carelessness of its employees . . ."; he stated that after reflection he had concluded that there was no evidence to support a finding of inadequate equipment or insufficient help and therefore a new trial was necessary to correct the error.
The defendant had presented a point for binding instructions which was refused and subsequently moved for judgment n. o. v., a motion which was also refused.
We now have two appeals, one by the plaintiff from the granting of a new trial, and the other by defendant from the refusal of its motion.
In addition to alleging the elements of inadequate equipment and insufficient help, as to which the court said there was no evidence, the plaintiff alleged that he was injured by the negligence of defendant's servants. We think there was no evidence of such negligence.
Plaintiff was an experienced freight handler employed for years in defendant's freight station at Elwood City, Pennsylvania. He was injured June 26, 1939, while engaged with two other employes in moving a pipe about thirty feet long and ten inches in diameter and weighing about 1,000 pounds from a freight car across the freight house floor to the consignee's truck which was backed up to receive it. Three pieces of this pipe consigned to National Tube Company arrived in the freight car which stood alongside the freight house. An iron plate was fastened by the plaintiff to the floor of the car and to the floor of the freight house so that freight could be trucked from the car into the freight house. On another side of the freight house, the consignee's delivery truck was backed up to a door of the freight house to receive the pipes. The plaintiff was assisted by two men, Fanno and Miller. In moving the pipes the three men used what the evidence calls a "nose *Page 438 
truck." The truck was nosed under the pipe which was then swung around so that it extended lengthwise over the truck, the front end of the pipe extending in front of the truck and the other end extending back over it and between the handles by which the truck was pushed. The plaintiff was on the right side holding the right handle of the truck with one hand and steadying the pipe with the other; Miller was on the left side holding the left handle with one hand and steadying the pipe with his other hand; Fanno was somewhere about the front end of the pipe with his hands on it for the purpose of steadying it. The plaintiff testified that in that way ". . . the truck carried the weight," and that "All you had to do was push and steady it." They moved the first pipe across the freight house floor and pushed or shoved it forward on the consignee's delivery truck. The mishap occurred while moving the second pipe. The plaintiff testified that the accident occurred as they moved the pipe into the freight house from the freight car; the witnesses called by defendant testified that it happened as they were pushing the pipe on the consignee's truck. For present purposes it is immaterial which is correct because there is no proof of defendant's negligence.
Plaintiff's account states they loaded the pipe, or tube as some of the witnesses call it, on the nose truck. "As we went through the door the uneven part — Q. Which door are you talking about? A. The one coming into the warehouse from the car. It caused this pipe to slip — start slipping on the nose truck and the two men assigned to help me, they both let go of it and jumped and I tried to hold on to the truck in order to keep the truck from kicking me, if it would kick it would have broke my leg, which it kicked off to the side and the foot of the truck kicked me in the side. Q. What part of the truck hit you in the side? A. The foot at the leg on the nose truck. Q. Which side? A. What would be on the, I think, right side as you would be pushing the *Page 439 
truck. . . . Q. What caused the pipe to slip? A. Well, the not adequate equipment, for the first thing, on account of it, just nothing but the nose truck; then the two men assigned to help me leaving go of it. Q. What was there at the door of the warehouse on the floor? A. Well, at the time there had been a plank, or a thick board had been nailed on there and then beveled so it would let you come up out of the warehouse on to the platform. . . . Q. You had it on that truck longwise, lengthwise? A. Yes, sir. Q. What did you do when that kicked out, when the truck kicked out? A. Well, when the two men jumped and left it go, I tried to hold on to it to keep from being hurt, but it was too much for me, I couldn't handle it. Q. With what force did it hit you? A. Well, they kick with a violent force, when it starts back there with the weight on it, such as the tube was."
In his cross-examination he gave substantially the same description. "Q. You started your truck over that with the second tube on it and over on to the station platform: then what did you do? A. Started right in the same procedure as with the first one. Q. How far did you get? A. We got right inside the door. Q. That is inside the warehouse door? A. Yes, sir. And the pipe started to slip and when it did Mr. Fanno and Miller let go of it. I tried to hold on to the truck to keep the truck from kicking back. When it would fall in the front this pipe would hit the floor and that caused the back end to raise up at a high angle; that would kick the truck back with a force, violent force, because there is 1,000 pounds of weight there. I was trying to hold on, to keep the truck from kicking me in the legs; that is what would catch you when you keep back, so I tried to hold on to it. That made the pipe roll and that made the truck kick on the side and the truck leg struck me on the side." He and his fellow workmen then put the pipe on the truck again and moved it over to the consignee's truck and loaded it. They then put the third pipe on the consignee's truck by the same process. *Page 440 
We can see nothing in that evidence that would justify a finding that defendant's servants were negligent in handling the freight. As the witness said, when the pipe was balanced on the truck, "All you had to do was push and steady it"; a risk of the employment was that the equilibrium of the pipe might be disturbed but that was a risk which the workman assumed: cf.Guerierro v. Reading Co., 346 Pa. 187, 29 A.2d 510; Reusch v.Groetzinger, 192 Pa. 74, 43 A. 398; Cacchione v. Hagan Co.,249 Pa. 32, 94 A. 440; Penna. R. R. Co. v. Brubaker,31 F.2d 939 (C.C.A. 6th, 1929).
Plaintiff's fellow workmen, who were called by the defendant, testified that the accident happened as they were loading the pipe on the consignee's delivery truck. If their testimony, either alone or taken with plaintiff's, would support a finding of negligence, it would be necessary to submit it to the jury even though plaintiff's own evidence was insufficient. But their evidence will not support such a finding. Miller was on the left side pushing the truck and steadying the pipe when "the front end of the pipe" had already "started in the automobile truck." The pipe "over-balanced . . . so we let go of it." The witness said of the plaintiff ". . . I understand he tried to hold the handle of the truck but it kicked out and flopped over and hit him . . ." In cross-examination, Miller was asked whether he knew "what caused that tube to slip." His answer was, "A. Well, the only thing I can account for that it was greasy." He was asked, "Q. What caused the handle to fly out of your hand? . . . A. Well, the weight of the tube. I didn't want to get hurt myself. When I seen we couldn't hold it, why I had to leave go."
The other fellow-servant, Fanno, testified: "Q. You pushed the hand truck with Miller and Blair, right across the station platform until you got to the truck is that right? A. Yes, I was at the end of the pipe in the front. Q. Is that where the accident happened? A. Sir? Q. The accident happened right over by the *Page 441 
automobile truck? A. The pipe was on the truck, on the Tube Mill truck, but you see before we get to that we give him push and pipe go right in all the way on the truck, and when little truck hit big truck why the truck kicked. Q. After the pipe came to rest was it on the truck? A. On the truck, all three on the truck, one never fall down on the ground."
In cross-examination he testified: "Q. You say that you skidded the pipe from the truck on to the bed of the automobile truck? A. Yes, sir; all three right on top of it. Q. Which one? A. All three. Q. All three? A. Yes, sir. Q. If it went on the automobile truck how did it kick the little truck back? A. Why, I tell you. You see this here little truck was sitting right in here (indicating), little truck hit right in there (indicating) and kick back. Q. It hit the pipe on the truck? A. No, sir; hit against the Tube Mill truck and kick back, the weight of the pipe kick the truck back. Mr. Miller, he went away and it catch Mr. Blair."
Another witness, Main, who was the truck driver employed by the consignee, the National Tube Company, testified that he had been in the freight office. When he came out they had already put one of the pipes in his truck and were about to put the second one in it. He testified: "Q. What happened? A. They started it on the truck and they had it pretty near on the truck. My version of it is just as we got up to the truck bed, why it kind of sloped a little and it kicked back. Q. What kicked back? A. This truck, this two-wheel truck it was carried on."
The mere happening of this unfortunate accident is not evidence of negligence. The obvious risk of the employment was that the pipe might get out of balance and if it did, that men would instinctively act to protect themselves. We see no evidence to support a finding of negligence. Cf. Detroit, G. H. M. Ry. v. Maldonado, 59 F.2d 911 (C.C.A. 6th, 1932).
The orders are reversed and judgment is here entered for defendant. *Page 442