## TRUMBULL *v.* MARTIN.

Opinion delivered December 23, 1918.

1. TRIAL—VIEW.—In an action for injuries caused by bursting of a saw, where appellant acquiesced in the jury's viewing the machine, the conduct of the jury in having the saw taken apart was not error.

2. MASTER AND SERVANT—DEFECTIVE MACHINERY—EVIDENCE.—In an action for injuries caused by a bursting saw, evidence *held* to sustain judgment for plaintiff.

3. CONTINUANCE — DILIGENCE. — Where a motion for continuance stated the residence of an absent witness at the time of the accident, but did not allege that a subpoena issued while the witness remained in the State, denial of the motion was not manifest abuse.

4. SAME—DILIGENCE.—An allegation in a motion for continuance that the party had made every reasonable effort to secure the evidence of an absent witness was insufficient, in the absence of facts, being a mere conclusion.

5. APPEAL AND ERROR—PRESERVATION OF EXCEPTIONS—MOTION FOR NEW TRIAL.—Where appellant excepted to the exclusion of evidence, but failed to preserve the exception in the motion for new trial, the ruling will not be reviewed.

6. APPEAL AND ERROR—PRESERVATION OF EXCEPTIONS.—Where appellant at the trial made specific objections to certain instructions different from those urged on appeal, the specific objections on appeal were waived, and the objections must be treated as general.

7. TRIAL — INSTRUCTIONS — OBJECTIONS.—General objections to instructions not inherently erroneous are insufficient.

8. TRIAL—CONFLICT OF INSTRUCTIONS.—In an action by a servant for injuries caused by the bursting of a saw, an instruction that it was the master's duty to furnish reasonably safe appliances *held* not in conflict with an instruction that the test of a master's duty is what a reasonably prudent person would ordinarily have done in such a situation.

Appeal from Polk Circuit Court; *W. C. Rodgers,* Special Judge; affirmed.

#### STATEMENT OF FACTS.

This is an action by the appellee against the appellant to recover damages for personal injuries. Appellee alleged that on December 26, 1916, he was in the employ of

the appellant, and under the direction of his foreman was at work at the appellant's stave mill at Mena, in Polk County, Arkansas. He was working at what is known as the cut-off saw; that the saw was defective in that it had a crack or flaw in it; that it was being run at a high rate of speed and on account of the defective condition, it broke in pieces and some of the fragments struck the plaintiff with great force producing severe injuries, which are specifically described in the complaint; that the appellant was negligent in directing the plaintiff to work at the saw in its defective condition and was negligent in running the same at a high rate of speed. The appellee alleged damages in the sum of $5,070 for which he asked judgment. The appellant denied all the material allegations of the complaint and set up the defenses of contributory negligence and assumed risk.

The testimony on behalf of the appellee was substantially as follows: On December 26, 1916, the appellee was in the employ of the appellant cutting slabs at the cut-off saw. The saw burst and a piece of it struck the appellee on the arm cutting the muscle. The foreman, Willis Jones, directed the appellee to work at the saw. When he went to work the saw was in motion; it was on a steel frame; was easy to run and not hidden. The frame ran up above the saw and came over. Appellee was not cautioned about the condition of the saw. Appellee knew how to put the slabs on the board and how to feed the saw. He was not throwing the slabs at the saw.

Another witness testified that he had worked at the appellant's mill; had seen the cut-off saw after the injury. He had seen the same saw before if they had not changed it; had worked at the saw a short time before the injury. When he quit work the saw was burst and a hole bored in it. At that time it was burst about six inches. The flaw extended from the outside. After the hole was bored in it, the saw was put back on. The hole was bored at the inside of the crack toward the shaft. It was a

small hole and the crack fit together and left no opening. It would take close observation to discover the crack. It could not be seen when the saw was revolving. Witness saw the pieces of the saw that burst after the injury. They looked to him like the same saw, but it was not on the same shaft and not in the same place. He did not know whether the saw was changed or not. The saw which had a crack in it was in a frame. A shaft went through and there was a saw on each end of the shaft. These saws were about of the same diameter. He did not know whether the appellee was injured at the equalizing saw or not, but it was one of the two equalizing saws that was cracked. The saw that broke off came from the same shaft that the witness worked at and was the saw that had the flaw in it.

Another witness testified that he went to the mill a few days after the accident and found the frame and some of the pieces of the broken saw. The pieces shown him were not pieces of a new saw unless it had had mighty rough usage. The teeth seemed to have been filed considerably and there were rust spots on the edges of one or two pieces of the saw. The saw had been badly broken into small pieces. Witness could not tell what portions of the saw were there, but all of the saw was not there.

There was further testimony tending to show that when there was a saw on both ends of the shaft they were called equalizing saws, and when a saw was used only on one end it was called a cut-off saw. When the appellee was working there, the saw was on the left-hand side or end of the shaft and the appellee called it a cut-off saw.

There was testimony on behalf of the appellant tending to show that the saw that injured the appellee was "a brand new saw with no flaws or cracks in it;" that the breaks were fresh; that the mill at the time of the injury was being run at the ordinary speed and that such speed was not sufficient to break the saw; that there was no defect about the saw or the frame at which the appellee was working; that there was a slab lying there

after the injury, cut about half off and the cut that went into the slab showed that the saw had been kinked, which threw the side of the saw against the iron frame and which had cut into the frame half an inch deep, and that was what caused the saw to break. The dents in the wood showed that it had pulled the saw to one side. Other witnesses on behalf of the appellant tended to corroborate his testimony.

The appellee introduced testimony in rebuttal tending to show that there had been no kink in the saw as shown by the cut in the piece of timber that was being run through the saw at the time of the accident; that the pieces of broken saw were not the pieces of a new saw; that the teeth were somewhat worn and had been filed. One of the witnesses in the rebuttal testified that he was at the place of accident soon after it occurred and saw the pieces of the saw; they were rusty and old looking. Witness did not notice the teeth. After the above witness was excused, the record recites: "By consent of both sides, the jury at this point go out and view the frame and saw thereon." After the jury returned to the box, witness, W. M. Martin, was recalled and was asked the following question: "Q. State whether or not the machine on which the plaintiff was hurt is in the same condition as it was in after the injury. A. It is." The appellant was also recalled and was asked the same question and gave the same answer.

The court instructed the jury and they afterward returned a verdict in favor of the appellee. The appellant moved for a new trial. One of the grounds of motion for a new trial was the alleged misconduct of the jury as follows: "Instead of viewing the frame and the cylinder and the saw as it appeared set in the same, the jury took said cylinder with the broken saw firmly clasped therein and fastened by a large nut and carried the same to a blacksmith shop about a block away from the court house, and had the blacksmith unscrew the nut and open up the cylinder and take out the piece of broken saw." Other facts will be stated in the opinion.

*James B. McDonough,* for appellant.

1. The jury was guilty of misconduct in opening the saw and using the same as evidence. They were sent out to view the frame on which the saw was fastened and nothing else. They were guilty of prejudicial misconduct. Kirby's Digest, § 6197; 67 Ark. 263; 74 *Id.* 19. Evidence cannot be introduced outside the court room. Kirby's Digest, § § 3146 to 3149, etc. See also Jones on Ev., § 407; Wigmore on Ev., vol. 3, § 1802; 6 Humphrey 275; 88 N. W. 272; 74 Pac. 418; 164 *Id.* 1020.

2. There is no substantial evidence to support the verdict. A mere scintilla is not sufficient. 114 Ark. 112. Conjecture and speculation, however plausible, cannot supply the place of proof. 113 *Id.* 353; 116 *Id.* 82; 108 *Id.* 8; 117 *Id.* 638. Substantial evidence is necessary. 122 *Id.* 445. This is lacking. 109 *Id.* 206; 46 *Id.* 555; 47 N. E. 104. See also 77 *Id.* 883; 70 N. W. 1103; 118 Mich. 275; 173 Mo. 524. The doctrine *res loquitur ipsa* does not apply. 101 Ark. 117, etc.

3. It was an abuse of discretion to refuse a continuance. 71 Ark. 62; 21 *Id.* 460; 85 *Id.* 334.

4. The court erred in excluding the evidence of John Johnson. It was material and clearly admissible. 57 Ark. 387; *Ib.* 512; 59 *Id.* 140; 62 *Id.* 254; 89 *Id.* 261; 191 S. W. 924; 81 Ark. 604; 78 *Id.* 147; 95 *Id.* 284.

5. It was error to give instruction No. 1. There was no evidence upon which to base it.

6. There was error in giving Nos. 2 and 3. No. 2 is abstract and No. 3 assumes negligence. 80 Ark. 260; 115 *Id.* 351; 118 *Id.* 304; 95 *Id.* 29. No. 4 emphasizes the alleged duty of the master to furnish safe appliances— not to use ordinary care to furnish a reasonably safe place. Cases *supra.*

7. It was error to give Nos. 5, 6 and 7, and to refuse defendant's Nos. 1 and 4. 157 Ind. 509; 159 N. Y. 548; 55 Atl. 681; 77 N. Y. S. 669; 173 Ill. App. 431.

*Pole McPhetridge* and *J. I. Alley,* for appellee.

1. There was no misconduct of the jury. But if there was appellant cannot complain. It was by consent

of counsel. They were kept together, made the view and were guilty of no misconduct. If there was any error it was invited. 67 Ark. 265. See also 74 *Id.* 19.

2. The evidence is sufficient to support the verdict. The question of negligence and assumed risk were properly submitted to a jury. 93 Ark. 191; 96 *Id.* 394; 95 *Id.* 560; 103 *Id.* 231; 91 *Id.* 337.

3. The court did not abuse its discretion in refusing a continuance on the showing made. 61 Ark. 88; 71 *Id.* 62.

4. John Johnson's testimony was properly excluded. He was not an expert and the question asked called for a conclusion of the witness. The question was leading and suggestive.

5. There was no error in the instructions. They state the law and the objections were general. 87 Ark. 396. The duty of the master is clearly defined and they were not prejudicial.

*Jas. B. McDonough,* for appellant, in reply.

1. The case in 74 Ark. 19 is conclusive as to the view.

2. The evidence wholly fails to show a defect in the saw. Negligence must be proved. If more than one conclusion is permitted by circumstantial evidence, it is insufficient. 154 N. Y. 90; 55 Kans. 600. Negligence must be proved and the burden is on plaintiff. Kirby's Digest, § 3147; 79 Ark. 608; 97 Id. 469; 100 *Id.* 462.

3. As to presumptions and conjectures, see 113 Ark. 353; 11 *Id.* 212; 45 *Id.* 295; 203 S. W. 246; 249 Mo. 509; 244 Mo. 76. Verdicts cannot be sustained upon inference. 219 Fed. 686; 239 *Id.* 108; 200 U. S. 488. See also 11 Ark. 212.

4. The accident is fully accounted for by the undisputed physical facts. 79 Ark. 608.

WOOD, J., (after stating the facts). We will dispose of the questions in the order presented in the brief of counsel for appellant.

1. The appellant contends that the jury was sent out to view the frame on which the saw was fastened and nothing else, and that it was misconduct on the part of the jury to open the saw as set forth in the above ground of the motion for a new trial. After hearing the evidence upon the above ground in the motion for a new trial, the court found in part as follows: "At the conclusion of the testimony in the case, counsel on either side had submitted numerous instructions which it would necessarily require some little time to examine and pass upon. The court suggested at this time that if counsel on both sides would consent, the jury might go down and view the appliance which was in controversy while the instructions were being settled. Counsel on both sides agreed to this suggestion and with the knowledge and consent of both sides, the jury were directed to go down in the care of the deputy sheriff and view the appliance which had been brought to the courthouse grounds by the defendant. The suggestion that the jury view this appliance was made during the progress of the trial by the defendant. When the jury was sent out to examine this part of the machinery, they were merely to make an examination. Neither side requested that the examination be made in any particular way or that it be in any way restricted. * * * The jury were kept together and were entirely free from any outside influence."

It thus appears from the facts as found by the court that the suggestion that the jury view the appliance came from the defendant and the defendant did not ask that the view be made in any particular manner, or that it be confined especially to what witness designated as the frame and not to that particular part called by one of the witnesses, the mantle, or that piece of shaft that the saw was fastened on. One of the witnesses testified that this piece of shaft that had the piece of saw on it and that they (the jury) took apart and examined, was a part of the frame work which they were directed to go out and examine. Another witness testified that the jury were authorized to examine the frame and that they were not

authorized, as the witness understood it, to unscrew any taps and examine the inside to see how it was.

The facts found by the court show that the jury were directed to examine the appliance which included the frame and that part of the shaft which held the piece of saw. The very purpose of the examination was to determine whether or not the saw that caused the injury was an old or a new one, and in the absence of some specific directions as to the method of making the examination, the jury were authorized, under the direction of the court, to adopt its own method for obtaining such information as the view or examination of the appliance would yield so long as no additional evidence was introduced.

The mere physical act of removing the tap so that the jury might have a better view of the pieces of saw, was not the taking of additional testimony. The releasing of the parts of the broken saw from this hub or cylinder was but in conformity with the instructions of the court to view the appliance and enable them the better to determine the issue as to whether the saw which injured the appellee was an old or a new saw. That was the issue upon which the evidence had been adduced and the direction to view the appliance made at the suggestion of the appellant contemplated an examination of every part constituting the appliance which would throw any light upon that issue and enable the jury to apply the evidence pro and con which had been brought forward. Kirby's Digest, section 6197; *Fitzgerald v. Laporte*, 67 Ark. 263-265, and cases there cited; *Stanley* v. *Commonwealth*, 63 S. E. 10.

2. The testimony as set forth in the statement was sufficient to sustain the verdict. It could serve no useful purpose to set out and discuss in detail the testimony bearing on the issue of fact as to whether the saw which injured the appellee was an old saw containing a crack of about six inches and had a hole bored in it, or whether it was a new saw which had been recently put on by the appellant. The issue as to whether appellant was negligent in furnishing the appellee a defective saw was one

for the jury and the verdict upon the evidence adduced on that issue is conclusive here.

3. The court did not err in overruling appellant's motion for a continuance. The motion, among other things alleged that Carter Harrison would testify that he was present at the time of the accident and that the plaintiff (appellee) was handling the slabs in an improper manner by carelessly and negligently throwing them into the cut-off saw; that the said Carter Harrison lived at Womble, Arkansas, at the time of the accident; that from the time this suit was brought until the date of the trial, appellant had made every effort to secure the evidence of the witness, but did not learn of his whereabouts until Monday, April 15; that the witness is located at Gurtie, Oklahoma, which is not a telegraph station and that the appellant had not been able to reach the witness either by telegraph or telephone, but if given until the next term of the court could take the deposition of the witness; that the testimony of witness was material and that the witness was not absent by the consent of the appellant, and that the appellant believed the testimony of the witness to be true.

There was no manifest abuse of the discretion of the court in overruling the motion for a continuance, therefore such ruling of the court will not be disturbed. *Joiner* v. *State,* 113 Ark. 112; *Cox* v. *Jonesboro,* 112 Ark. 96; *Bruder* v. *State,* 110 Ark. 402; *Sullivan* v. *State,* 109 Ark. 407, and other cases in 1 Crawford's Digest, p. 1012-1015. The motion, while stating that the residence of the witness at the time of the accident was in Womble, Arkansas, does not state that the appellant had a subpoena issued before the witness left Arkansas. If the appellant had been sufficiently diligent in having the subpoena issued, he might have learned the whereabouts of the witness in time to have taken the deposition before the trial came on. Therefore, the motion did not state facts sufficient to show due diligence upon the part of the appellant. *American National Ins. Co.* v. *White,* 126 Ark. 483. The allegation in the motion that appellant

had "made every reasonable effort to secure the evidence of Carter Harrison was but the statement of a conclusion." Such statement, without setting forth the facts upon which such conclusion is bottomed, is not sufficient. *Puckett* v. *State,* 71 Ark. 62.

4.   The appellant offered to show by a witness, John Johnson, that there was no possible way for the saw to have reached the frame and cut the same except by the operator pushing one end of the wood ahead of the other and thus bending the saw to reach the frame.   The court refused to permit the appellant to make the above proof, to which ruling appellant excepted but did not preserve his exception in his motion for a new trial.   Since the trial court did not have the opportunity to review this ruling, we will not do so.   "Exceptions to rulings of evidence not incorporated in the motion for new trial cannot be considered on appeal."   *Brown* v. *Simsboro Cash Store,* 102 Ark. 531; *Hastings Industrial Co.* v. *Copeland,* 114 Ark. 415; *Kilpatrick* v. *Rowan,* 119 Ark. 175.

5.   Among other instructions, the court gave the following:   No. 2.   "It was the duty of the defendant to furnish plaintiff reasonably safe appliances; if he failed to do this and this failure was the cause of the injury; if you find this by all the facts and circumstances in evidence, you will find for the plaintiff."

The appellant, at the trial, made certain specific objections to the above instruction.   Appellant contends in his brief that the above instruction is erroneous for the reason that it placed upon the appellant a higher degree of care than that required by the law because it practically makes the master an insurer of the safety of the servant.   The objection to the instruction at the trial was not placed on that ground.   Hence appellant waived it, and his objection so far as the point here urged is concerned, must be treated as a general objection.   The instruction was not inherently erroneous and a general objection to the same was not sufficient.   If appellant, by specific objection had called the attention of the trial court to the particular defect of which he here complains

for the first time, doubtless the court would have corrected the instruction in conformity with his suggestion. *St. L., I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 260; *Pettus* v. *Kerr,* 87 Ark. 396.

Moreover the court in its instruction No. 4 told the jury that "the test of a master's duty in furnishing appliances is what a reasonably prudent person would ordinarily have done in such a situation." The two instructions were not in conflict and when taken together they were tantamount to declaring the law to be, that it was the duty of the defendant to exercise such care as a reasonably prudent person would exercise under similar circumstances to provide the plaintiff with reasonably safe appliances and if defendant failed to do this, and such failure was the cause of the plaintiff's injury, then the defendant would be liable. The appellant saved a general objection to each of the instructions that were given by the court and it would unduly prolong this opinion to consider them in detail. We have, however, considered each of the objections urged by the appellant to the rulings of the court in giving and refusing prayers for instructions and we are convinced that the charge of the court when taken as a whole correctly declares the law applicable to the facts of this record in conformity with familiar principles that have been repeatedly announced by this court involving the relation of master and servant and their reciprocal duties under a similar state of facts.

We find no error in the rulings of the trial court prejudicial to the appellant and the judgment is, therefore, affirmed.