## McEACHIN *v.* BURKS.

4-3597

Opinion delivered November 12, 1934.

948

*N. A. McDaniel* and *Cockrill, Armistead & Rector,* for appellants.

*Anderson Burks* and *John L. McClellan,* for appellee.

BUTLER, J. Appellee recovered a verdict in the sum of $10,000 for injuries suffered while employed by the appellants, a partnership, as a common laborer in the construction of a concrete tank at the State Hospital near Benton. Appellee is a married man, was a manual laborer, strong and in good health and had been employed on this job since it was started two months before his injury, at which time he was twenty-one years old. Before that he had farmed and worked for a while on State highway construction.

The appeal in this case involves only the question of the employers' negligence. It is appellants' contention that there is no legal evidence sufficient to support the verdict. No evidence was offered by the appellants. The case was submitted on the testimony adduced by the appellee in which there is no conflict. The difference of opinion arises as to what are the just inferences reasonably deducible from the evidence.

The tank on which appellee was working when he sustained his injury is a rectangular pit. It was excavated with a steam shovel to the depth of twelve feet. On the bottom and sides wooden forms were installed into which concrete was poured thus making the walls around the pit and a partition wall. The wooden forms had been removed, leaving the walls, which were sixteen inches wide. On the outside of the walls the dirt had been excavated for the purpose of installing drains. At intervals along the walls and near the middle were holes four inches square. The top of the walls had not been smoothed or plastered over, leaving the surface more or less uneven. On the date of the injury to appellee, August 25, 1933, the partition was being used for the storing of lumber and the laborers were engaged in the afternoon of that day in rolling loads of cement and sand in wheelbarrows along and on top of the walls surrounding the pit, under the supervision of their boss or foreman. For just what purpose this material was in-

tended to be used is not disclosed, nor is that fact important. During the afternoon and just before appellee sustained his injury, he had rolled along the wall a couple of loads of sacks of cement in a wheelbarrow. He had also rolled along the wall two wheelbarrow loads of sand. Herman Lott, a fellow workman, had rolled a load of sand up in another wheelbarrow. Appellee's superior directed him to leave the wheelbarrow in which he had brought up the sacks of cement with the last load remaining in it and directed him to take the wheelbarrow Lott had been using and get another load of sand. That wheelbarrow still had some sand in it which appellee unloaded and immediately went to the sand pile, reloaded it, and began pushing this wheelbarrow so loaded along the top of the wall as he had been directed to do. In pushing the wheelbarrow he held the handles which extended on either side of him with his hands. That was the first day he had rolled a wheelbarrow on top of the wall. The holes were uncovered, and it was necessary to guide the wheelbarrow so as to miss them. It was while making this trip that he lost his balance and fell into the hole resulting in serious injury to himself.

In describing the manner in which he pushed the wheelbarrow and how he happened to fall, appellee stated that he had no knowledge of the condition of the wheelbarrow and had had no opportunity to ascertain it. He took the one he had been instructed to take and never got far enough with the load on it to be able to discover its condition. He was uncertain what caused him to fall—he was trying to avoid the holes as he propelled the wheelbarrow, which, as he stated, "just rolled some way on the rocks or hole and got me overbalanced and kicked me in. I can't tell just exactly—I was trying to keep the wheelbarrow under control to keep from falling. I can't say exactly what the wheelbarrow hit."

Appellee was required to repeat several times, both on direct and cross-examination, the manner in which he rolled the wheelbarrow and how his fall was occasioned, but the above quotation contains essentially all that he stated in regard to the incident and his knowl-

edge of its cause. No other person observed appellee as he fell or just before his fall. Three of his fellow employees testified. All that two of them knew was that they heard the fall of the wheelbarrow and the outcry of the appellee and saw his condition when they reached him in the pit into which he had fallen. The third employee did not see the accident but went also at once to his injured fellow and noticed the wheel-barrow and described its condition at that time. His testimony is to the effect that he examined the wheelbarrow a little— but not much; that he looked at it as it was being taken out of the pit sufficiently to observe its condition, which he described as "pretty shackly." In the frame part there were bolts missing and wire had been inserted where they should have been to hold the frame together.

At the conclusion of the testimony the appellants moved for a peremptory instruction which the court refused, and this action on the part of the court is the principal ground of error assigned. The contentions are (1) that there is no evidence to sustain the claim that the accident resulted from youth, inexperience, or failure to warn; (2) that there is no legally sufficient evidence to show that the wheelbarrow was defective before the accident, or that any defect in the wheelbarrow caused the accident; (3) that the risks were obvious and assumed. In disposing of the first contention it is sufficient to say that the allegations of the youth and inexperience of the appellee and failure to warn were abandoned and were not issues in the case. Contentions numbered two and three will be discussed in the order above stated, which is the reverse from the order of discussion in appellant's brief.

It is contended that there is no competent and legal evidence tending to show the condition of the wheelbarrow before the accident. We agree with the appellants that evidence is incompetent where the defects discovered are such that they may reasonably be supposed to have been the result of the accident itself when there are no circumstances in proof from which there may arise a reasonable inference that the defective condition of the instrumentality existed prior to the accident.

In this case, however, it appears that a just inference may be drawn from the evidence relating to the condition of the wheelbarrow that such condition had existed for a considerable time. Its ramshackle condition might reasonably be deemed to have been occasioned by the loss of the bolts from the frame of the barrow and the substitution of wire in their stead. Learned counsel contend that the manner of construction of wheelbarrows is one of common knowledge. We agree that this is true, but differ with counsel in their conclusion that wheelbarrows are not rigidly built; as to the frame or "body" of a wheelbarrow, the reverse is. true. It is likewise the case that while wire is often substituted for a lost bolt, it cannot, and does not draw the parts together as firmly. as a bolt well tightened. The fact that immediately after the accident the barrow was found to be held together with wire, justified the jury in concluding that this condition had existed for a considerable time and was the cause of the frame of the barrow being "shaky." Common experience in the ordinary affairs of life and the fact that wheelbarrows are ancient vehicles in common use would also justify the jury in the assumption that a wheelbarrow with a loose frame would be easily overturned when loaded, because it would be liable to move from side to side as it is being rolled along, and that the condition of the wheelbarrow in question was the proximate cause of its being overturned while being rolled along the wall which caused the appellee to lose his balance and to fall within the pit.

The next question is, was the danger attendant on the movement of the barrow along the wall so great and so readily discoverable as to constitute a lack of ordinary care under the circumstances on the part of the appellee and create an assumption on his part of the risks involved. It is the general rule that a servant assumes the risks ordinarily attendant upon his work and also those risks created by the negligence of the master which create a situation of danger open and obvious and readily appreciable by a person of ordinary intelligence who continues to work in such situation. There are exceptions, however, to this rule. One of these is that

where the work is being done under the direct command and supervision of the master, the risk will not be assumed by the servant unless it is so grave and apparent that no person of ordinary intelligence, regardful of his own safety, would engage in the work despite the command.

In the recent case of *National Refining Co.* v. *Wreyford, ante* p. 598, the cases bearing on this question were collected and the general rule drawn from them was thus stated: ''In cases of this sort'' [where the employee is working under the direct supervision of the master and obeying his commands] ''the employee is not required to weigh the degree of danger and decide whether it is safe for him to act, and, in a measure, he is relieved of the usual obligation to exercise ordinary caution in the performance of his work. In ordinary cases he may assume that the employer has superior knowledge and may rely thereon. * * * This rule is founded on the psychological truth that habits of obedience are formed by employees to a degree which often overrules independent thought and action and thus deprives them of the exercise of intelligent foresight and prudence, which would otherwise protect them. The rule, however, has application (as will be discovered by a review of the cases cited) where the superior who gives the command is present in person actually directing the performance of the work, or where the command is given with a degree of knowledge equal to that of the employee as to the situation and circumstances surrounding the performance of the act commanded. The question of assumption of risk of the danger arising from an act commanded by a superior, under the rule stated, is always under circumstances from which the jury might find that the command was negligence in that it directed the performance of an act which, from its very nature, or from the attendant situation and circumstances, might be reasonably apprehended as dangerous to the employee.''

In the instant case the work was being done under the direct supervision and direction of appellee's superior, the representative of the master, who commanded

him to use a particular wheelbarrow, load it with sand, and to roll it along the top of the wall. Was the risk attendant upon this work so manifestly great and so appreciated by appellee as to justify him in refusing to obey the command and to create on his part by obedience to it an assumption of the dangers involved? We think the evidence was sufficient to submit that question to the jury. It is true that the appellee, as a reasonable man, would know that his movement along the wall would be attended by some danger, but which he had the right to believe could be overcome by the exercise of due care on his part. He knew the condition of the wall and the existence of the pit, but did he know the condition of the wheelbarrow, and had he had a reasonable opportunity of appreciating the danger to be expected from such condition within the time he had taken charge of the barrow under the command of the master until the accident occurred? And was the knowledge of the entire situation and appreciation of the danger sufficient to cast upon him the assumption of the risks involved? These were questions for the jury, which have been resolved in favor of the appellee upon substantial evidence.

We have already discussed the proposition that the jury might have justly concluded that the defective condition of the wheelbarrow was the proximate cause of appellee's fall and his injuries. The next question is, what was the duty of the master with respect to affording the appellee safe tools with which to work and the effect of his command to use the particular tool? Counsel argue that a wheelbarrow is a simple tool, and that there was no duty resting upon the master to inspect the same for defects. While a wheelbarrow is a common tool, it cannot be said to be a simple tool—like a chisel, a woodman's axe, or tools of such nature which are commonly used. The simplicity of the tool, however, is not always the criterion by which the duty of the master with regard to it is to be established, but rather the use to which the tool is to be put, the locality where the work is to be performed, and the attendant circumstances. It must be conceded that where a servant is employed in pushing a wheelbarrow loaded with

material like loose sand along level ground where there is no danger to be reasonably anticipated from a false movement of the barrow, or its being overturned, no duty would rest upon the master to inspect its condition before command to a servant to use it. A different situation, however, presents itself in the case at bar. The master knew the ordinary danger to be expected from any movement along the wall with tools in good condition, and therefore, before directing the servant to use an instrument with which he was not acquainted, it was the duty of the master to acquaint himself with it sufficiently to discover whether or not it was reasonably safe and in condition for the purpose intended. Therefore, it must be assumed that the master knew the condition of the barrow. If, then, the command to use it directed the performance of an act which from its very nature or from the attendant situation and circumstances, might reasonably be apprehended as dangerous to the servant, the jury would be warranted in finding that the master was negligent in giving such command. *National Refining Co.* v. *Wreyford, supra.*

Appellants complain of instruction No. 2, given at the request of the appellee, because it submitted to the jury the question of the negligence of the appellant as alleged in the complaint. The contention is that there were several grounds of negligence alleged in the complaint which were not supported by any evidence, and that the instruction given was therefore erroneous. The jury could not have been misled or the appellant prejudiced on account of the quoted language contained in the instruction. All of these allegations had been abandoned except the one relating to the defective condition of the wheelbarrow and the negligence of the master in that regard, the case being submitted to the jury on that sole issue. This appears to have been the thought of counsel for the appellants at the time the objection was interposed to the instruction during the course of the trial, because, in the specific objection made, there was no complaint about any particular word or phrase in this instruction. The specific objection made was, "because there is no testimony to show any negligence

on the part of the employer." This had the effect of waiving other specific objections to the instruction. *Trumbull* v. *Martin,* 137 Ark. 495, 208 S. W. 803.

Instructions Nos. 3 and 4 submitted the question of the right of the servant to rely upon the command of the master and whether or not, under the circumstances, the servant should be held to have assumed the risks. These instructions, which we deem it unnecessary to set out in full, correctly state the law of the case, which is in effect that as approved in the cases heretofore referred to.

The appellant requested instruction No. 6 which would have told the jury that the master was under no duty to furnish the servant with a safe place to work where the servant is engaged in work of such nature that it changes his place of work from time to time and the situation where the work is performed, and that any hazards arising under those conditions are assumed by the servant. There are several reasons why this instruction should not have been given. In the first place, the appellee was not engaged in work which was constantly changing in character. The pit had already been constructed and the walls were undergoing no change at the time of the accident. The servant was working under the direct supervision of the master and obeying his command, and the duty of making his working place and appliances safe had not been delegated to him.

Instruction No. 7, requested by the appellants, would have told the jury that there could be no recovery for any defective condition of the wheelbarrow. Instruction No. 8, requested by appellants, would have directed no recovery because of post holes in the wall. Instruction No. 10, requested by appellants, was to the effect that it was not the duty of appellants to put railing around the wall or flooring upon its top. Instruction No. 7 was properly refused, and what has previously been said, with no further discussion, is sufficient to dispose of that instruction. Instructions Nos. 8 and 10 were properly refused because the questions presented by these instructions were not issues. For the same reason, instruction No. 13, requested by appellant, was properly

refused. This instruction dealt with the duty of the master with relation to young and inexperienced servants.

Instruction No. 9, requested by appellants and refused by the court, would have told the jury that no recovery could be had if appellee accidentally lost his balance and fell or if he accidentally stepped from the wall. Instruction No. 14, requested by the appellants and refused by the court, related to the assumption of obvious risks by the servant. These instructions were fully covered by instructions previously given, and it was not required of the court to restate propositions of law already given. What we have said of instructions Nos. 10 and 14 disposes of the question of the court's refusal to give instruction No. 11, requested by appellant. This related to an employee knowingly working under an unsafe condition or who should have known of the same, and that a continuing of the work with knowledge of these risks, or those which became known to him during the progress of the work, would create the assumption of such risks by him under such circumstances.

The sufficiency of the evidence to support the amount of the verdict is not questioned. Therefore, since there appears to be substantial evidence fixing liability on the appellant and since the court committed no prejudicial error in its charge to the jury, the verdict is upheld, and the judgment of the court affirmed.