LEONIDAS, RESPONDENT, *v.* GREAT NORTHERN RAILWAY CO. ET AL., APPELLANTS.

(No. 7,675.)

(Submitted September 27, 1937. Decided October 27, 1937.)

[72 Pac. (2d) 1007.]

304

*Messrs. Weir, Clift & Bennett,* for Appellants, submitted a brief; *Mr. Wm. L. Clift* argued the cause orally.

305

308

*Mr. Lester H. Loble* and *Mr. Hugh R. Adair*, for Respondent, submitted a brief; *Mr. Adair* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment entered on a verdict in favor of plaintiff for damages for personal injuries alleged to have been sustained by him while in the employ of defendant railway company as a section laborer, and caused by defendants' alleged negligence.

The complaint consists of two causes of action, but at the conclusion of the evidence plaintiff elected to stand upon the second, and we shall therefore disregard the first.

The first contention of defendants is that the complaint does not allege sufficient facts to constitute a cause of action. The question was raised by demurrer and by objection to the introduction of evidence. The particular point relied upon is that

the complaint does not show that the alleged negligence of defendants was the proximate cause of plaintiff's injuries.

The complaint alleges, in substance: That plaintiff was in the employ of defendant railway company on May 6, 1932, as a section laborer doing repair work on its railway track near the town of Windham; that defendant George Pappas was defendant company's foreman, with authority and control over plaintiff; that plaintiff and both defendants were at that time engaged in work constituting an essential and integral part of interstate commerce; that plaintiff was subject to and bound to obey the orders of Pappas; that it was the duty of defendants to use reasonable care to furnish a sufficient number of competent employees to safely perform the work in which they were engaged; that plaintiff was ordered by Pappas to lift and carry a heavy, water-sogged tie, weighing approximately 150 pounds; that to carry such a tie with reasonable safety required the services of at least two able-bodied and strong men to the knowledge of defendants; that plaintiff was inexperienced in the carrying of water-sogged ties, did not know its weight, or that one man was insufficient to carry it; that because of defendants' negligence in failing to furnish sufficient help to assist plaintiff, and while he was carrying the tie, he turned his ankle upon a rock, and, "by reason of the heavy tie which plaintiff was then and there carrying in obedience to the orders of defendants," his muscles and ligaments were overtaxed, resulting in the injuries complained of. He further alleged that but for the negligent acts and omissions of defendants the injuries would not and could not have occurred. The conclusion is alleged that the negligent acts and omissions of defendants were the proximate cause of plaintiff's injuries.

Defendants contend that the proximate cause of plaintiff's injuries is shown to have been the turning of plaintiff's ankle upon a rock while he was carrying the tie, and not the negligence of the defendants.

In effect, plaintiff contends that the negligence of defendants in ordering plaintiff to carry the tie without assistance was the proximate cause of his injuries; that the turning of his

ankle was caused by carrying the heavy tie; and that this would not have resulted had two men, instead of one, been carrying the tie. Here it is directly averred that but for the negligence of the defendants, the injuries to plaintiff would not have occurred. This is a sufficient allegation of the causal connection between the negligence complained of and the injury. (Compare *Flynn* v. *Poindexter & Orr Livestock Co.*, 63 Mont. 337, 207 Pac. 341.) "No particular form is required in alleging the causal connection between the negligence charged and the injury. Where the acts of negligence are alleged, as a general rule it is sufficient to make a direct general allegation that plaintiff's injury resulted from such negligent acts or that such negligent acts caused the injury; or that it was wholly caused thereby; or that the injury was caused by reason of, by, through, or in consequence of, such negligence." (45 C. J. 1095.)

The general averment of the causal connection between defendants' negligence and the injury may, of course, be overcome by specific facts alleged, showing the intervention of an independent agency which produced the injury and which negatives the general averment; but "if from the character of the intervening agency and the circumstances under which the intervention occurred as disclosed by such specific averments reasonable minds might reach opposite conclusions in determining whether or not the intervention of an independent agency of the character described should have been reasonably expected to occur in such a way as to produce injury, then the court may not say as a matter of law that such specific averments overcome the general averment. In such a case, the demurrer must be overruled, and the complaint be held sufficient upon the strength of the general averment, regardless of the specific averments." (*Cleveland etc. Ry. Co.* v. *Clark*, 51 Ind. App. 392, 97 N. E. 822, 828.)

Here it cannot be said by all reasonable men that the turning of plaintiff's ankle could not have been reasonably expected to follow from the alleged negligence of defendants in requiring plaintiff to carry the heavy tie under the conditions then and there existing. Furthermore, the complaint is sufficient under the

statute on which the action was based, if it shows that the injuries resulted in part from the negligence of the defendants.

Section 51 of Title 45, U. S. C. A., on which the action is based, provides in part: "Every common carrier by railroad while engaging in commerce between any of the several States ⁕ ⁕ ⁕ shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ⁕ ⁕ ⁕ for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." That there is liability for injuries resulting in part from the negligence of defendants see *Rocco* v. *Lehigh Valley R. R. Co.*, 288 U. S. 275, 53 Sup. Ct. 343, 77 L. Ed. 743.

The complaint is not defective for failure to show that the defendants' negligence was the proximate cause of plaintiff's injuries.

The next contention of defendants is that the court erred in not sustaining their motion for nonsuit and directed verdict upon the ground that the evidence shows that plaintiff is barred from recovery because he assumed the risks of his employment.

The evidence, though in some respects conflicting, but viewed in the light most favorable to plaintiff, shows that the usual practice and custom in Montana in replacing ties is for the men to work in pairs, with two men to a tie. Plaintiff had been in the employ of defendant railway company for about 15 years before sustaining the injuries, and for 13 years had been section foreman, and knew of this practice. He had handled several hundred ties a year. On May 6, 1932, he had a partner helping him until the passenger train went by, which was around 8:30 in the morning, and then the foreman ordered him to work alone, one man to a tie, and to carry a tie 8 rail lengths, being about 250 feet. At that time there was a new tie within 12 or 15 feet from the place where the old tie had been taken out and where it was desired to place another, and when plaintiff

attempted to pick up this "new tie" the foreman said to him, "Let go of that tie; go up here, hurry up, * * * God damn you; * * * drop this tie and go up there and get this other tie." The tie which he was ordered to get was lying on the ground, and had been there for a considerable time. It had rained each day for three days before, and the tie was water-soaked and heavy. Plaintiff said it was twice as heavy as those in the pile. It was while he was carrying this tie across his back that he sustained the injuries complained of. Before undertaking to handle the tie alone, plaintiff called for his partner, Varner, to help him, but defendant Pappas ordered plaintiff to do it alone. Plaintiff obeyed the order of Pappas because, as he said, "If I don't, he is going to discharge me." Had defendants permitted Varner to help plaintiff carry the tie, it would not have been carried across his back.

The injury occurred while plaintiff was carrying the tie over rough ground and up an embankment. He had carried it about 160 feet when the injury occurred. In explaining just how the injury arose, plaintiff said: "When I got the tie on my back and was walking along at first, I was not walking in the track because of the holes of the old ties, where they didn't put in the new ties, so I walk along the side of the track; I had to walk along there, as far as I could before I find a place to get into the track. So I had to walk along below the ballast of the ties, along the bank. Walking along you ask where I walked: Right there when I tried to go in, I fall right there when I tried to go in; I stepped on a rock and turn my ankle, turn over, and I fall on the ground with the tie. Where I fell the condition of the ground was wet; the grass is green and wet and shoes slippery and rough ground. The ground was rough and grassy. I looked for a chance to get up the bank with the tie so I could walk in the railroad track but I didn't get up there, you know, the tie fell. When I was walking along there carrying this tie on my back and stepped on this rock which was slippery and my feet were slippery, I fell forward on my face and knees. You ask if I let go of tie when I fell: The tie hit one end on the ground and tipped up, you know, that been more serious.

It hit one end on the ground and tipped, and when I fell on the ground this tie fell on me or fell with me; the tie fell on my back.'' He said he had never had experience in carrying that kind of a tie, meaning a water-sogged tie.

The second cause of action, and the only one submitted to the jury, was based upon the Federal Employers' Liability Act, being sections 51 to 59 of Title 45, U. S. C. A. Section 54 provides: ''In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.''

The defense of assumption of risk is available to defendants ▮ in all cases except where the violation of a federal statute, enacted for the safety of employees, has contributed to the injury or death of the employee. (*Sorenson* v. *Northern Pac. Ry. Co.,* 53 Mont. 268, 163 Pac. 500, and cases therein cited.) The rule is well settled that an employee does not assume the risk of injuries from a hazard brought about by the failure of the employer to exercise the degree of care required of him in discharging his primary duties to the employee, unless the hazard is known to the employee, or unless it is so obvious that an ordinarily prudent person under the same circumstances would have observed and appreciated it. (*Matson* v. *Hines,* 63 Mont. 214, 207 Pac. 474; *Grant* v. *Nihill,* 64 Mont. 420, 210 Pac. 914; *Fotheringill* v. *Washoe Copper Co.,* 43 Mont. 485, 117 Pac. 86; *Sorenson* v. *Northern Pac. Ry. Co.,* supra. Compare *Goodyear Yellow Pine Co.* v. *Mitchell,* 168 Miss. 152, 149 So. 792, 150 So. 810; *Illinois Central R. Co.* v. *Langan,* 116 Kan. 318, 320, 76 S. W. 32; *Prink* v. *Longview, P. & N. Ry. Co.,* 153 Wash. 300, 279 Pac. 1115; *Stephens* v. *Hannibal & St. J. R. Co.,* 96 Mo. 207, 9 S. W. 589, 9 Am. St. Rep. 336; *Rigsby* v. *Oil Well Supply Co.,* 115 Mo. App. 297, 322, 91 S. W. 460; *McEachin* v. *Burks,* 189 Ark. 947, 75 S. W. (2d) 794; *Macklin* v. *Fogel Const. Co.,* 326 Mo. 38, 31 S. W. (2d) 14; *Maslek* v. *Pennsylvania Ry. Co.,*

26 Ohio App. 530, 160 N. E. 523, affirmed in 118 Ohio St. Rep. 644, 163 N. E. 302; *Tillian* v. *Atchison, T. & S. F. Ry. Co.,* 40 N. M. 80, 55 Pac. (2d) 34; *Makino* v. *Spokane, P. & S. Ry. Co.,* 155 Or. 317, 63 Pac. (2d) 1082; *Kansas, O. & G. Ry. Co.* v. *Hawkins,* 178 Okl. 639, 64 Pac. (2d) 266; *Louisville & N. R. Co.* v. *Hall,* 223 Ala. 338, 135 So. 466; *Missouri Pac. R. Co.* v. *Hunnicutt,* (Ark.) 104 S. W. (2d) 1070; *Pearl River Valley R. Co.* v. *Moody,* (Miss.) 171 So. 769; *Bowman* v. *Kansas City El. Light Co.,* (Mo. App.) 213 S. W. 161; *Everett Hardware Co.* v. *Shaw,* (Miss.) 172 So. 337; *Weatherford* v. *Fiske-Carter Const. Co.,* 182 S. C. 294, 189 S. E. 224; *Port Angeles West R. Co.* v. *Tomas,* (C. C. A.) 36 Fed. (2d) 210; *Owosso Mfg. Co.* v. *Drennan,* 182 Ark. 389, 31 S. W. (2d) 762.)

Ordinarily, an employee has a right to assume that he may safely act under the direction of the foreman. (*Sorenson* v. *Northern Pac. Ry. Co.,* supra.) In 18 R. C. L. 655, the author has well stated principles which we think apply to this case. It is there said: "It is a fundamental of the relation of master and servant that the servant shall yield obedience to the master and this obedience an employee may properly accord even when confronted with perils that otherwise should be avoided. In any case, but more plainly when a command is sudden and there is little or no time for reflection and deliberation, the employee may not set up his judgment against that of his recognized superiors; on the contrary, he may rely upon their advice, assurances and commands, notwithstanding many misgivings of his own. It by no means follows that because he could justify disobedience of the order he is barred of recovery for injuries received in obeying. He is not required to balance the degree of danger and decide whether it is safe for him to act, but he is relieved in a measure of the usual obligation of exercising vigilance to detect and avoid danger. Ordinarily, he may assume that the employer has superior knowledge and rely thereon, especially when the act is one that could be made safe by the exercise of special care on the part of the employer. The employee may assume that such care will be taken. Again, it is a psychological truth that employees form

a habit of obedience that overcomes independent thought and action, depriving them of power to exercise intelligence that otherwise would protect them."

In *Steele* v. *Erie R. Co.*, (D. C.) 54 Fed. (2d) 688, the court held that an employee does not, as a matter of law, assume the risk of injury resulting in obeying the order of a foreman to use a defective appliance after the employee had complained to the foreman that the appliance was defective and, therefore, knew, that it was defective. The United States Supreme Court denied a writ of certiorari in this case (285 U. S. 546, 52 Sup. Ct. 395, 76 L. Ed. 937). To the same effect are *New York, N. H. & H. R. Co.* v. *Vizvari*, (C. C. A.) 210 Fed. 118, L. R. A. 1915C, 9; *Lehigh Valley R. Co.* v. *Skoczyla*, (C. C. A.) 278 Fed. 378, all of which cases arose under the Federal Employers' Liability Act here under consideration. Under facts very similar to those here, it was held that the question of assumption of the risks was for the jury, in *Tull* v. *Kansas City So. Ry. Co.*, (Mo. App.) 216 S. W. 572.

We are not able to say that the hazard of carrying the tie was so open and obvious that plaintiff, as a matter of law, must be held to have assumed the risk of injury by yielding obedience to the command of the foreman. The question was one for the jury.

Defendants have cited and rely upon a great many cases sustaining the proposition that plaintiff assumes the risk of physical injury sustained by reason of his overtaxing his strength. These cases are inapplicable here. Plaintiff here was not injured because of overlifting. He lifted and carried the tie successfully until he stepped on the rock and turned his ankle, at which time he fell with the weight of the tie injuring his back. His injuries were not due primarily to a strain or by overtaxing his strength; they were caused by turning his ankle on the rock causing him to fall with the heavy object on his back. This was a situation that the jury was warranted in finding defendant railway company and its foreman, in the exercise of reasonable care, should have anticipated in the light of common experience.

Thus far we have treated the case as if the defense of assumption of the risk was available to defendants. Careful consideration of the Federal Employers' Liability Act convinces us that this defense was not available to the defendants, and hence, for this additional reason, it was proper to deny the motion for nonsuit and directed verdict.

As pointed out above, the defense of assumed risk has been withdrawn "in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." Section 51 of Title 45, U. S. C. A., Federal Employers' Liability Act, makes an interstate carrier liable for injuries "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." This section was certainly enacted for the safety of employees. Its purpose was to encourage interstate carriers to employ careful and competent agents and employees. Primarily, of course, it was designed to abolish the defense of fellow servant; but it was intended to promote the safety of employees by being assured of careful and competent fellow servants. It makes the carrier an insurer of the competency and carefulness of its agents and employees. So we have no hesitancy in saying that section 51 was enacted for the safety of employees. It seems equally clear to us that if plaintiff sustained injuries resulting in whole or in part from the negligence of any of the officers, agents, or employees of the carrier, then section 51 has been violated.

We conclude, therefore, that since section 51 is a statute enacted for the safety of employees, and since there was substantial evidence in the case to warrant the jury in finding that it was violated because of negligence of an agent or employee of defendant railway company, the defense of assumption of risk was expressly taken away by section 54.

In Thornton on Federal Employers' Liability Act, third edition, section 129, it is said: "The employee does not assume the risk of injury arising out of negligence of the employer or a fellow servant." (Compare, also, *Paulsen* v. *McDuffie,* 4 Cal. (2d) 111, 47 Pac. (2d) 709; *Fisher* v. *Kansas City, M. & O.*

*Ry. Co.,* 169 Okl. 282, 36 Pac. (2d) 744; *Gulf, C. & S. F. Ry. Co.* v. *Houston,* (Tex. Civ. App.) 45 S. W. (2d) 771.)

The decisions of the Supreme Court of the United States leave some doubt as to what that court would hold on this point. In *Seaboard Air Line Ry. Co.* v. *Horton,* 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, the court assumed that assumption of risk was properly in the case where there is negligence of a fellow servant, and hence a violation of section 51; but it does not appear that the point here being considered was pressed upon the court for consideration. The precise question was evidently attempted to be presented to that court in *Jacobs* v. *Southern Ry. Co.,* 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970, but the court, being impatient of the loquaciousness of counsel, passed up the question by holding that the defense of assumption of risk is available in all cases, except where the negligence of the carrier is in violation of some statute enacted for the safety of employees. It did not touch upon the question whether, when section 51 is violated, the defense is available.

In the later case of *Reed* v. *Director General of Railroads,* 258 U. S. 92, 42 Sup. Ct. 191, 192, 66 L. Ed. 480, that court said: "In actions under the federal Act the doctrine of assumption of risk certainly has no application when the negligence of a fellow servant which the injured party could not have foreseen or expected, is the sole, direct, and immediate cause of the injury. To hold otherwise would conflict with the declaration of Congress that every common carrier by railroad while engaging in interstate commerce shall be liable to the personal representative of any employee killed while employed therein when death results from the negligence of any of the officers, agents or employees of such carriers." The phrase "which the injured party could not have foreseen or expected," was, we think, used by the court only because it covered the facts there involved. We think the same rule would have to be applied whether the injured party could have foreseen or expected the negligence, or not. If the defense has been abolished where there has been negligence of a fellow servant, and hence a vio-

lation of section 51, then whether the injured party could have foreseen or expected such negligence is immaterial. On the other hand, if the defense is available as at common law, then the employee does not assume risks from causes which he could not foresee or expect, and there is no need to resort to the Federal Employers' Liability Act at all. Hence, we believe the United States Supreme Court announced a correct rule in the *Reed Case* with the quoted phrase eliminated. That merely was an additional reason for holding that in that case there was no assumption of risk.

What we have already said on the question of assumption of risk as applied to an action based upon the first part of section 51, also applies to the last part of that section, which makes the carrier liable for injuries resulting ''by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances,'' etc. Long before that Act was passed, text-writers and jurists had declared that the term ''appliances'' embraces and includes the persons employed to operate them. (Wood on Railroads, sec. 381; *Haviland* v. *Kansas City, P. & G. R. Co.,* 172 Mo. 106, 72 S. W. 515; *Thorpe* v. *Missouri Pac. Ry. Co.,* 89 Mo. 650, 2 S. W. 3, 58 Am. Rep. 120.) This court has so held in *Sorenson* v. *Northern Pac. Ry. Co.,* supra. Certainly, the latter part of section 51 was enacted for the safety of employees. The jury impliedly found it had been violated here; hence, the defense of assumed risk is out of the case for this additional reason. (*Warren* v. *Jackson,* 204 Ill. App. 576.)

Defendants contend that the evidence was insufficient to show negligence on the part of defendants and that such negligence was the proximate cause of plaintiff's injuries. It is fundamental that if the employer fails to use reasonable care to provide a sufficient number of workmen to conduct the work at hand with reasonable safety, he is guilty of negligence. (*Sorenson* v. *Northern Pac. Ry. Co.,* supra; *Boyd* v. *Great Northern Ry. Co.,* 84 Mont. 84, 274 Pac. 293; *Illinois Central R. Co.* v. *Langan,* 116 Ky. 318, 320, 76 S. W. 32.) There was ample evidence showing that defendants failed and refused to perform this duty to warrant submission of the issue of de-

fendants' negligence to the jury and to sustain its verdict. Likewise, under the evidence, the question of whether that negligence was the proximate cause of plaintiff's injuries was a question for the jury.

Defendants assign as error the court's refusal to strike certain evidence from the record tending to show injuries not specifically pleaded, and its refusal to give their offered instruction, reading: "It is alleged in the complaint that as a result of his stepping upon a rock while he was carrying a heavy water-sogged tie, plaintiff turned his ankle and as a result his muscles and ligaments were over-taxed by reason whereof he suffered a severe sprain of the ligaments of his back, and that because of said injuries plaintiff has sustained internal injuries of a permanent character. You are instructed that plaintiff is bound by the averments contained in his complaint and therefore cannot recover damages for a fractured vertebra, if one occurred, or for any other injuries not pleaded in the complaint."

The complaint, after alleging that as a result of the fall plaintiff's muscles and ligaments were overtaxed, by reason whereof he sustained a severe sprain of the ligaments of his back; that he was obliged to remain in the hospital for twenty-one days; that he suffered great and excruciating bodily pain and mental anguish; that his injuries are permanent in character; that his earning capacity has been permanently impaired, then contained this allegation; "That the exact nature and extent of said injuries are at this time to plaintiff unknown but plaintiff alleges upon information and belief that he has sustained internal injuries of permanent nature."

The above instruction was properly refused. The general allegation just quoted enabled plaintiff to prove internal injuries not otherwise specifically described in the complaint. It was not error to refuse to strike such testimony from the record on defendants' motion.

It is contended by defendants that the award of damages ($8,000) is excessive and the result of passion and prejudice. Plaintiff produced testimony of two doctors that in their

opinion his injuries are permanent; that he is unable to perform manual labor required of section laborers, or even the slightest labor; that he will never be able to resume manual labor. Plaintiff was shown to be 48 years of age at the time of the injury. He is a foreigner, uneducated, and not equipped to gain a livelihood otherwise than by manual labor. He has a life expectancy of 22.4 years. As to the extent of the injuries, the evidence was conflicting in some particulars; but in considering the question under consideration we must accept that most favorable to plaintiff. The verdict is not so large as to shock the conscience and understanding, and therefore must be upheld. (*Baatz* v. *Noble,* ante, p. 59, 69 Pac. (2d) 579.)

Other instructions given and refused are complained of by defendants. A review of the instructions given and refused convinces us that the jury was properly instructed on the various phases of the case, and the refused instructions were either erroneous or touched upon matters already covered by instructions given. We may say in this connection that the jury was instructed on the question of assumption of risk as if that defense were available to defendants. To that extent the instructions were more favorable to defendants than they were entitled to, but of this they cannot complain, since the verdict was warranted under the evidence even though that defense were available. Complaint is made that certain instructions are conflicting, but we do not find them so. The judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Cause taken to Supreme Court of the United States by writ of certiorari on February 15, and writ granted on March 28, 1938.