**VIRGINIAN RY. CO. v. VIARS.**

No. 6337.

United States Court of Appeals Fourth Circuit.

Argued Nov. 14, 1951.

Decided Jan. 4, 1952.

Pendleton, Princeton, W. Va., on the brief), for appellant.

William C. Wines, Chicago, Ill. (Bruneau E. Heirich, Chicago, Ill., and Martin C. Bowles, Charleston, W. Va., on the brief), for appellee.

Before PARKER, Chief Judge, and DOBIE, Circuit Judge, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

Plaintiff, Viars, commenced this action in the United States District Court for the Southern District of West Virginia to recover damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., from the Virginian Railway Company (hereinafter called defendant). The case was tried before a jury, and from a verdict and judgment of $30,000 in favor of plaintiff, defendant has appealed.

We think the case was tried under proper instructions and that the only question we need consider is whether under the evidence, defendant was entitled to a directed verdict in its favor. Since the issues of fact were determined in favor of plaintiff, our function is limited by the Seventh Amendment to the Constitution of the United States to ascertaining whether, as a matter of law, the evidence was sufficient to submit the case to the jury. We must, therefore, examine the record in a light most favorable to the plaintiff and draw therefrom every reasonable inference in his favor. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Tiller v. Atlantic Coast Line Railway, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Scocozza v. Erie Ry. Co., 2 Cir., 171 F.2d 745.

We, therefore, from this standpoint, review the pertinent facts. Plaintiff was a section foreman in charge of section 43 of defendant's road bed. On March 21, 1941, he was ordered to unload a portion of a car of "Tarvia" or asphalt and use it for surfacing a railroad crossing at an industrial siding in West Virginia. The weather was freezing cold and the "Tarvia" was so hard that it could not be removed from the car with picks and shovels. After digging at it with such instruments for several

W. T. O'Farrell, Charleston, W. Va. (J. O. Atkinson, Jr., Norfolk, Va., and John R.

hours, plaintiff and his two assistants gave this up as a hopeless task and attempted to soften the "Tarvia" with heat from a "weed burner" or flame thrower, but without success. Plaintiff, who had been trained in the use of explosives while serving with the United States Navy and who had been furnished dynamite with wire and electric battery for exploding it by defendant as a part of his equipment as section foreman, then decided that he would soften the "Tarvia" by the use of dynamite. He fired three charges of dynamite without any results, but, on the firing of the fourth charge, the wire carrying the electric current from the battery in plaintiff's hand was blown by the explosion against or so near to the highly charged wires of the catenary system above the electrically operated railroad that a high voltage current of electricity was caused to pass through the wires and the body of the plaintiff, with the result that he suffered injuries of a very serious character. The equipment furnished plaintiff for use in exploding dynamite was an electric battery and a coil of wire not adequately insulated. He had to hold the wire in his hands against the poles of the battery to obtain the electric charge to explode the dynamite and was so engaged when he was injured.

■ The evidence does not show that plaintiff was ordered to use dynamite in unloading the car but it does not show that he was given any instructions inconsistent with his using it for that purpose. He was furnished the dynamite to use in the performance of his duties as his judgment might dictate; and, in view of his experience in the use of explosives, there is nothing in the record to indicate that his use of it to soften the "Tarvia" so that it could be removed from the car was unreasonable.

The evidence further shows that plaintiff had requested defendant to furnish adequately insulated wire in view of the fact that it was being used around an "electrification system" and a "shooting Box" or detonator, which would enable the operator to discharge his duty by pushing down a wooden handled plunger. There was evidence that, if these had been furnished, the danger of receiving such an injury as plaintiff received would have been greatly minimized if not obviated; and under such circumstances it was for the jury to say whether the failure to furnish such reasonable safeguards was not the cause of the injury.

■ The defendant first contends it was entitled to a directed verdict because the evidence does not support the jury's finding that it was negligent in failing to furnish plaintiff a shooting box and insulated cable. With this contention we cannot agree. It is well settled that an employer is not made an insurer by the terms of the Federal Employers' Liability Act. See Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497. We think, however, that when defendant furnished plaintiff with dynamite, which is obviously a dangerous instrumentality, it had the affirmative duty to see that the equipment to be used in firing the explosive was safe and suitable for that purpose. As has already been pointed out, plaintiff on several occasions had requested that he be provided with a shooting box and insulated cable since he did not feel that the use of inadequately insulated cable and an electric battery to be entirely safe. At the trial, plaintiff stated that the accident would not have occurred if the requested equipment had been furnished. We quote: "Q. Mr. Viars, had you had a rubber, heavy rubber insulated exploding cable, or wire, in lieu of the one which was being used that morning, in your opinion would that have prevented the voltage from the high tension wire from carrying through the cable and electrocuting you at the time when this work was being done? A. Yes." And further: "If I had a shooting box and pushed down on that plunger, I wouldn't have been shocked." In regard to the advantage of the wooden handles on a shooting box over the touching of naked wires to an electric battery, plaintiff stated:

"Q. This handle on the shooting box here, that handle is insulation itself, it is wood? A. Yes.

"Q. And is wood recognized as being a poor conductor of electricity? A. Yes, poor conductor, or non conductor."

550

The only conclusion that can be drawn from this positive testimony is that the jury could quite properly find that if defendant had furnished the requested equipment, instead of allowing plaintiff to set off explosives with an inadequately insulated cable and an electric battery, the accident could have been avoided.

We next turn to defendant's contention that the District Court should have directed a verdict in its favor, even if defendant was negligent in failing to furnish safe equipment, as defendant could not foresee that plaintiff might attempt to remove the "Tarvia" from the gondola car by the use of dynamite. We find no merit in this contention.

Plaintiff was given explosives and vested with discretion as to their use in performing his duties. His testimony was to the effect that he could use the dynamite for "any cause that I would see fit, for the company's interest." The defendant was aware that explosives were being used by section foremen, in close proximity to the catenary system to remove rock slides from its tracks, for plaintiff testified that on one occasion, he had blasted a rock slide in the presence of the roadmaster. In view of the fact that plaintiff had been furnished with explosives by defendant, had been vested with discretion as to their use in the performance of his duties and was engaged in company work at the time of the accident, it is no defense to argue that defendant could not foresee the particular use to which the dynamite was put in this instance. As stated in 38 Am.Jur. 671: "It is not a necessary element of negligence that one charged therewith should have been able to anticipate the precise injury sustained. To render one liable for negligence, it is sufficient that he should have foreseen that the negligence would probably result in injury of some kind to some person, and he need not have foreseen the particular consequence or injury that resulted." See, also, Munsey v. Webb, 231 U.S. 150, 34 S. Ct. 44, 58 L.Ed. 162; Stanolind Oil & Gas Co. v. Brown, 5 Cir., 62 F.2d 398.

It is said, also, that because the plaintiff might have used a fuse with the dynamite, instead of the electric equipment, or might have used picks and shovels without dynamite even though it might have taken longer, he elected to use a dangerous rather than a safe method of doing his work and is thereby precluded from recovery. There was evidence, however, that the use of fuses in exploding the dynamite was more dangerous than the use of electrical equipment; and, on the evidence of plaintiff, the picks and shovels had been tried without success. If, however, plaintiff adopted a dangerous way of doing the work when a safe one was open to him, this amounted to nothing more than assumption of risk or contributory negligence, neither of which excuses defendant's negligence or bars recovery under the Federal Employers' Liability Act. Tiller v. Atlantic Coast Line Ry. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497. If plaintiff was guilty of negligence in using the dynamite, this did not bar him of recovery, if defendant was also guilty of negligence which contributed to his injury, but went merely to the reduction of damages. This aspect of the case was fairly presented by the trial judge in his charge to the jury.

In two respects, at least, our case is stronger for the plaintiff than Wilkerson v. McCarthy, supra. There, plaintiff could easily have avoided the danger since he "could have taken a slightly longer route and walked across the pit, thus avoiding the use of the board." 336 U.S. at page 61, 69 S.Ct. at page 417. Here, Viars tried, before using the dynamite, various means, without success. There, "the railroad put up 'safety chains' fastened to guard posts, enclosing 16½ feet of the pit, on its north, south and west sides." 336 U.S. at page 56, 69 S.Ct. at page 415, which at least served as a warning. Here, no warning of any kind had been given to Viars in connection with his use of the dynamite.

For these reasons, the decision of the District Court is affirmed.

Affirmed.