Michael SPANIK, to his own use and to the use of Liberty Mutual Insurance Company, a body corporate,

v.

DAWE CONTRACTING CORPORATION.

Adm. No. 4449.

United States District Court D. Maryland.

Feb. 12, 1964.

Fred Ginsberg and Eugene Chircus, Baltimore, Md., for libelant.

David R. Owen, Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

This suit in admiralty to recover for personal injuries raises questions of liability and damages.

The issue of liability may be briefly stated and decided. Libelant is a ship's carpenter, a member of a gang which on October 15, 1961, was employed by Oriole Ship Ceiling Company aboard the SS Globe Progress in Baltimore Harbor, to fit the vessel for grain. Libelant was deckman for the gang, which was working in the #3 hold. The #3 hatch is 31′ x 35′, with 42″ coamings. A catwalk 42″ wide runs along the port side of the hatch. Notice had been given to stop work at 5 p. m., and a few minutes before that hour libelant was standing on the deck, beside the catwalk, opposite the middle of the port side of the hatch, bending over to put his gear into a bucket. Respondent renders various services to ships, and on the day in question had ship-cleaners aboard the Globe Progress, one of whom, Daughtry, about 4:55 p. m. was standing on the deck, near the forward end of the catwalk, folding a heaving-line.[1] At the far end of the line was a "monkey fist", a rope ball about the size of a large orange, which facilitates casting the line. The monkey fist became caught between the catwalk and the coaming at the aft end of the hatch. Despite the fact that libelant was almost directly between Daughtry and the monkey fist, Daughtry, without warning libelant, gave the line a hard jerk, which freed the monkey fist and projected it rapidly through the air, striking libelant on the right temple. Respondent's foreman testified that when a monkey fist becomes engaged, the practice is to jerk it loose if you are standing near it, but to approach it before freeing it if you are a considerable distance away.

Respondent's advocate argues that Daughtry was not negligent unless there was a "probability" of injury from his action, citing Virginian Railway Co. v. Viars, 4 Cir., 193 F.2d 547, 550 (1952), and Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 101, 59 A.L.R. 1253 (1928). The test stated in those opinions is essentially the same as the definition of negligence in the ALI Restatement, Torts, sec. 282, namely, "any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for the protection of others against unreasonable risk of harm." See also sec. 284: "Negligent conduct may be either: (a) an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another, * * *." Daughtry was negligent, and respondent is liable for the fruits of his negligence.

Findings and Conclusions with respect to Damages—Not to be Published.

\* \* \*

All elements considered, including the wages lost until the spring of 1962, the months necessary for vocational rehabilitation, the loss of wage-earning capacity (which the Court finds to be slight in view of libelant's low and irregular earnings before the accident), the headaches, the tinnitus and the occasional dizziness, the Court finds and assesses damages of $7,500. A decree for that amount will be entered, giving effect to the compensation carrier's lien of $1,193.71.

---

1. A line used for casting from a vessel to enable a hawser to be hauled ashore or to another