## BLAIR *v.* BALTIMORE & OHIO RAILROAD CO.

No. 265.   Argued January 2, 3, 1945.—Decided January 29, 1945.

*Mr. J. Thomas Hoffman* for petitioner.

*Mr. Charles J. Margiotti* argued the cause, and *Mr. Vincent M. Casey* was on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

A jury in the Common Pleas Court of Allegheny County, Pennsylvania, awarded the petitioner a verdict for $12,000 damages for personal injuries in his action against the respondent railroad under the Federal Employers' Liability Act, 45 U. S. C., § 51 *et seq.* That Act authorizes an employee to recover for such injuries if they result "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its . . . appliances . . . or other equipment." The complaint set out in great detail the events leading to the injury and alleged that the injury was the result of the defendant's negligence in failing, under the circumstances narrated, to provide petitioner with reasonably suitable tools and appliances, a reasonably safe place in which to work, reasonably sufficient and competent help to do the work, and the negligence of the respondent's employees who assisted him in doing the work. Respondent moved for judgment notwithstanding the verdict on the ground

that there was no evidence to prove any negligence on its part. This motion was denied. Although the trial judge thought the verdict was "just and reasonable," respondent's motion for new trial was granted, on the ground that while the testimony was sufficient to support a finding that the negligence of respondent's employees contributed to the injury, it was not sufficient to show that the injury resulted from defendant's failure to provide adequate equipment, or sufficient and competent help. Both parties appealed to the Pennsylvania Supreme Court, which reversed, holding that petitioner had assumed the risk of injury by remaining in the employment and that there was no evidence to support negligence in any respect. 349 Pa. 436, 37 A. 2d 736.

To deprive railroad "workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them." *Bailey* v. *Central Vermont R. Co.*, 319 U. S. 350, 354. Because important rights under the Act were involved, we granted certiorari.

Despite conflicting evidence, there was sufficient evidence to justify the jury in finding that the injury was inflicted under these circumstances. Petitioner's duties were to load and unload inbound and outbound freight. In unloading a car standing at the platform adjacent to respondent's warehouse, petitioner came to three 10-inch seamless steel tubes, approximately 30 feet long and weighing slightly more than a thousand pounds each. The pipes were greased and slick. The petitioner went to his superior, informed him that the pipes were too heavy for him to move and suggested that it was not customary for the railroad to unload pipes of this kind at its warehouse, but to send the car directly to the consignee's place of business where it had proper equipment for unloading heavy material. This suggestion was rejected and petitioner was then told to get Mr. Miller, the car inspector, and Mr. Fanno, the section man, to help him unload.

Petitioner's insistence that the three could not unload the heavy pipes was overridden, and he was then told to go ahead and do the work or they "would get somebody else that would." Under these circumstances, petitioner undertook to unload the pipes and carry them through the warehouse to place in the consignee's truck which had backed up to the warehouse platform on the opposite side from the railroad car. The best equipment available for moving the pipes was a "nose truck" of the kind commonly used in railroad stations to move freight and luggage. It was about five feet long and two feet high, consisting of a flat metal frame, with an upright flange and two wheels at one end and wheelbarrow handles at the other. The problem was to balance three greased, 1000-pound, 30-foot steel tubes on this truck, move them across two platforms through the warehouse and place them in the consignee's truck. The men took the nose truck into the car, managed to get the first pipe lengthwise on it, worked it through the car door to the platform over a steel bridge connecting the car and the platform, and then carried it to the waiting truck. Petitioner held one handle of the nose truck with one hand and the steel tube with the other. Miller occupied the same position as to the other handle and the pipe. Fanno held the pipe and the truck at its wheel end. They were all necessarily crouching, since the truck was only two feet high when moved in a level position, as it had to be, to keep the tube from slipping off. The first tube was successfully moved. While they were attempting to move the second tube in the same manner, it slipped. Fanno and Miller released their holds, but petitioner did not. The heavy tube in slipping caused the truck to kick back resulting in petitioner's injury.

In the petitioner's four-year service this was the first occasion that such heavy pipe had been moved at the warehouse. Fanno, aged 60, and Miller, aged 68, had never before assisted petitioner in such a movement; their duties were entirely different. The evidence indi-

cated that the immediate cause of the greasy pipe's slipping as it did was either (1) an uneven place on the warehouse floor due to its having sunken in; or (2) pushing the nose truck against the standing company truck with such force as to make the tube move with great suddenness. The fact that Fanno and Miller released their grips after it began to slip also contributed to the suddenness and force of the kickback of the nose truck which caused the petitioner's injury.

We think there was sufficient evidence to submit to the jury the question of negligence posed by the complaint. The duty of the employer "becomes 'more imperative' as the risk increases." *Bailey* v. *Central Vermont R. Co.,* 319 U. S. 350, 352, 353. See also *Tiller* v. *Atlantic Coast Line,* 318 U. S. 54, 67. The negligence of the employer may be determined by viewing its conduct as a whole. *Union Pacific R. Co.* v. *Hadley,* 246 U. S. 330, 332, 333. And especially is this true in a case such as this, where the several elements from which negligence might be inferred are so closely interwoven as to form a single pattern, and where each imparts character to the others.

The nature of the duty which the petitioner was commanded to undertake, the dangers of moving a greased, 1000-pound steel tube, 30 feet in length, on a 5-foot truck, the area over which that truck was compelled to be moved, the suitableness of the tools used in an extraordinary manner to accomplish a novel purpose, the number of men assigned to assist him, their experience in such work and their ability to perform the duties and the manner in which they performed those duties—all of these raised questions appropriate for a jury to appraise in considering whether or not the injury was the result of negligence as alleged in the complaint. We cannot say as a matter of law that the railroad complied with its duties in a reasonably careful manner under the circumstances here, nor

that the conduct which the jury might have found to be negligent did not contribute to petitioner's injury "in whole or in part." Consequently we think the jury, and not the court, should finally determine these issues.

The court below, however, thought that the plaintiff should not recover because he had assumed the risk of this danger. It is to be noted that at the time this case was tried Congress had passed an act which completely abolished the defense of assumption of risk. 53 Stat. 1404. *Tiller* v. *Atlantic Coast Line, supra.* We need not consider whether this statute applies to this case, since we are of opinion that it cannot be held as a matter of law that the petitioner assumed the risks incident to moving the steel tubes.

It is true that the petitioner undertook to do the work after he had complained to the company that the pipe should not be moved in the manner it was. But he was commanded to go ahead by his superior. Under these circumstances it cannot be held as a matter of law that he voluntarily assumed all the risks of injury. The court below cited by way of comparison its holding in a former decision, *Guerierro* v. *Reading Co.*, 346 Pa. 187, 29 A. 2d 510. There it had announced the rule that an employee has a duty to quit his job rather than to do something which he knows, or ought to know, is dangerous. This Court does not apply the doctrine of assumption of risk so rigorously. In *Great Northern R. Co.* v. *Leonidas,* 305 U. S. 1, we affirmed the judgment of the Supreme Court of Montana, 105 Mont. 302, 72 P. 2d 1007. In its opinion the Montana court stated: "We are not able to say that the hazard of carrying the [railroad] tie was so open and obvious that the plaintiff, as a matter of law, must be held to have assumed the risk of injury by yielding obedience to the command of the foreman." So here, we do not think that this petitioner can be held to have assumed

the risk by obeying the command of his employer's foreman to go on with his job. The judgment of the Supreme Court of Pennsylvania is reversed, and remanded to that court for proceedings not inconsistent with this opinion.

*Reversed.*

The CHIEF JUSTICE and MR. JUSTICE ROBERTS are of the opinion that the judgment should be affirmed.