## ROSENFELD v. CURTIS PUB. CO.
### No. 251, Docket 20576.

Circuit Court of Appeals, Second Circuit.
July 9, 1947.

Mortimer Hays, of New York City (Hays, Podell & Shulman and Mortimer

Feuer, all of New York City, on the brief), for plaintiff-appellant.

Wm. Dwight Whitney, of New York City (Cravath, Swaine & Moore, George S. Collins, and Ralph L. McAfee, all of New York City, on the brief), for defendant-appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal is from a judgment entered on a verdict for defendant in an action for libel. Plaintiff seeks reversal principally on two grounds: (1) error in the charge on burden of proof, and (2) failure to dismiss two defenses of consent on plaintiff's motion before trial, renewed at the trial.

The allegedly libelous material appeared in the July 1, 1944, edition of defendant's magazine, The Saturday Evening Post. It was contained in an article entitled, "How to Beat the Races" and in a one-column photograph appearing in connection with it. The picture shows plaintiff three-quarters facing the camera, with his left hand on the shoulder, and apparently whispering into the ear, of a man whose back is toward the camera. A grandstand crowded with people is in the background. Underneath the picture is the caption, " 'How can we lose?' This race-track question is often the prelude to a very bad investment." In the column next to the picture, in the text of the article, there appear the statements: "* * * what chance has the average bettor, influenced by hunches, seedy touts and vagrant tips, of picking one horse out of a large field completely unknown to him and making a buck for himself?" and "All systems are extremely fallible, but any one is infinitely better than picking horses haphazardly or listening to hangers-on." Neither the plaintiff's identity nor that of the other man, identified at the trial as Samow, is revealed in the article or the picture. In the suit plaintiff contended that, because of the proximity of the offending language to the picture, he was held up to contempt and ridicule as a "seedy tout" or "hanger-on" at race tracks.

Defendant had secured the photograph from the Wide World photographic agency after it had accepted the article for publication. The circumstances under which the photograph was made were sharply disputed. Falk the photographer testified for the defendant that the picture was taken in 1938 at the Empire City Race Track as part of an assignment to get some horse-racing pictures. Under Falk's version he met plaintiff in the company of Samow, an old friend of Falk, at the track. Samow requested that Falk take his picture, and Falk acquiesced, explaining that he wanted a photograph of "passing information along." The two then posed for two photographs at Falk's direction, one of which became the picture in suit.

On the other hand, plaintiff denied posing for the photograph or knowledge of when it was taken. Samow, testifying for plaintiff, stated that the picture could not have been taken in 1938. To prove this he produced a suit resembling the one he was wearing in the picture. He testified that this was the first suit he owned of the type appearing in the picture and that he had purchased the suit from a business concern which had not existed before 1941. But, as the defendant was able to point out, the suit in the picture had four buttons on its sleeve, and the suit exhibited by Samow had only three. Samow then asserted that the suit might have been altered.

Further to cast doubt upon the date claimed by Falk, Samow testified somewhat equivocally that he had not been to the races before 1940. But in another photograph produced by Falk having a background similar to the picture in suit, though not definitely identified by Falk as having been taken on the same day, Samow appears in the company of a man holding a 1938 racing program. This testimony discrediting the plaintiff's version was therefore strong and was apparently accepted by the jury, who found for the defendant.

Plaintiff originally brought suit in the Supreme Court of New York, and defendant, as a citizen of another state, removed the case to the district court below. Plaintiff moved, under Rules 12(b), 12(f), and 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to dismiss four of the defenses set up in defendant's answer. This motion was granted

as to two defenses, but was denied as to two. The denial was reaffirmed by the trial judge at the trial. Plaintiff appeals from the denial of his motions as well as from the final judgment entered on the verdict against him.

■ One of the defenses which survived plaintiff's motion alleged as a complete defense "that the taking of said picture and the use of it in connection with an article devoted to the subject of betting on horse races was with the knowledge and consent of plaintiff." Despite the fact that the defense did not allege that plaintiff consented to the use of the photograph with this particular article, it was sufficient. Whether or not the consent was broad enough to cover this article was a question to be determined by the triers of fact. Schoepflin v. Coffey, 162 N.Y. 12, 20, 21, 56 N.E. 502; Hope v. I'Anson and Weatherby, 18 T.L.R. 201, 205; Cook v. Ward, 6 Bing., C.P., 409, 130 Eng.Rep. 1338. Hence the District Court properly denied the motion, and the trial judge was correct in refusing to dismiss the defense at the end of trial. Burton v. Crowell Pub. Co., 2 Cir., 82 F.2d 154, and Sinclair v. Postal Telegraph & Cable Co., Sup.Ct., 72 N.Y.S.2d 841, are not contrary. In each of these cases the photograph itself, because of grotesque distortion or addition of photographic matter, was not one to which plaintiff had consented. Therefore, in those cases no issue of consent was presented.

■ The other defense unsuccessfully attacked was a partial defense of good faith and lack of malice apparently pleaded in mitigation of damages. To support these allegations defendant relied upon the allegations of plaintiff's consent to the photograph. The only facts available to show good faith as a partial defense are those known to the defendant at the time of publication. Sun Printing & Publishing Ass'n v. Schenck, 2 Cir., 98 F. 925, 929; Hatfield v. Lasher, 81 N.Y. 246; Morey v. Morning Journal Ass'n Co., 123 N.Y. 207, 25 N.E. 161, 9 L.R.A. 621, 20 Am.St.Rep. 730. Here defendant stood, as to knowledge of consent, in the shoes of Wide World, from which it had purchased the right to use the photographs.

Wide World, in turn, could take advantage of the knowledge of its agent, the photographer Falk. The refusal to dismiss the defense was therefore proper. Moreover, under present liberal procedure the lack of a former allegation of the time when knowledge was obtained will not deprive a party of a defense of good faith when he has presented facts at the trial to support such a defense. See Rule 15(b), F.R.C.P. The court's refusal to strike the defense after trial was therefore also correct. Finally, had the failure to dismiss the partial defense been error at the time, it would now be harmless, since the jury found consent as a complete defense and the court entered judgment on the verdict. See Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691.

■■ But plaintiff urges that the charge under which the jury arrived at its verdict failed to place the burden of proof of the defense of consent on the defendant. While there seems to be little direct authority, yet with respect to the closely analogous defense of privilege we find the burden of proof generally, though not universally, to be placed upon the defendant; and since this is the settled New York rule, we shall follow the analogy here. Hoeppner v. Dunkirk Printing Co., 254 N.Y. 95, 100, 172 N.E. 139, 72 A.L.R. 913, 917; Tierney v. Ruppert, 150 App. Div. 863, 135 N.Y.S. 365, 369; Cassidy v. Gannett Co., 173 Misc. 634, 18 N.Y.S. 2d 729; Gatley on Libel and Slander, 3d Ed. 1938, 314; 3 Restatement, Torts, 1938, § 613(2) (b), p. 299. But we think the effect of the charge as given was to place the burden of proof of this issue upon the defendant. A charge must be considered as a whole from the point of view of the impression it seems to convey to a jury of laymen. Sutton v. Public Service Interstate Transp. Co., 2 Cir., 157 F.2d 947, 948, certiorari denied Public Service Interstate Transp. Co. v. Sutton, 67 S.Ct. 870. There is no magic in the technical phrase "burden of proof"; indeed, it is lawyers', rather than laymen's, language. Here the court first charged conventionally that the plaintiff had the "burden of establishing *the allegations of his complaint.*" (Italics added.) It then gave the plaintiff's case

on the facts, followed by the defendant's case, introduced by such repeated expressions as, "The defendant, on the other hand, says" or "gave you the testimony." Next the court went into the plaintiff's denial and rebuttal testimony and then directly to the credibility of Samow. After referring to the photograph showing the racing form of 1938, with which it dealt with marked restraint, admonishing the members of the jury of their final responsibility for the facts, it came to the issue of consent.

■ On this the full charge was as follows: "Reference has been made to consent of the plaintiff to the taking of this photograph which appears in the article in question. Let me say at once, that there is no evidence that the plaintiff gave his consent to the use of the photograph with that particular article. But the defendant says that so far as the photograph itself is concerned it was taken with his consent because of what Falk has testified to, and because he says that this picture is a posed picture. That is again something for your determination." Thereafter, after some general statements by way of summary of the plaintiff's and defendant's case respectively, the judge passed to the issue of damages.

Now, the discussion of consent, viewed after the event of the trial, is not so clear cut as might be desired. The second sentence, removing from the jury the issue of consent to the use of the photograph with the particular article, is too favorable to the plaintiff, standing alone. But the proper qualification given by the third sentence, that general consent to the use of the photograph for publicity purposes might be deduced from Falk's testimony, and particularly from his showing that the photograph was posed, is briefly, almost cryptically, expressed. The two together, however, do make a complete statement which seems to us adequate. Cf. United States v. Bayer, 67 S.Ct. 1394, 1396. Thus the reference to the "posed picture" could be understood only as qualifying the second sentence and properly leaving the issue of general consent to the jury's determination. This is all the plaintiff was entitled to, for the jury could properly find such consent on the evidence. Moreover, the form of expression again resorted to—"the defendant says"—adequately showed that this was a part of defendant's defense, not of the plaintiff's case.

■ Of course, these statements were sufficiently ambiguous that the defendant was entitled upon request to their amplification and clarification. Plaintiff contends that he made such a request after the charge was given. What happened was this. Plaintiff's counsel, out of the hearing of the jury, first excepted to the court's submission of the issue of consent to the jury because of the asserted insufficiency of the evidence, next excepted to the court's comment upon Samow's credibility, and then said, "Those are my only exceptions." After a colloquy with defendant's counsel, the court then directed attention to plaintiff's requests to charge, whereupon plaintiff's counsel requested a charge that the burden of proof of consent was on the defendant because the charge as given "does not cover that." The court replied: "I have already charged that the defendant has not proved consent to the use of the photograph with the article. I do not need to amplify that and do not want to." To this the plaintiff merely took an exception, and then turned to certain of his specific requests to charge on other matters.

What the judge said was obviously true so far as it went; he had been, if anything, overgenerous to the plaintiff in his original statement. Whether he was going on to speak of the second part of his charge and desisted when counsel failed to press the point, or whether he had just forgotten his charge in its completeness, we do not know. But it seems to us it was for counsel to realize that the judge had not recalled or repeated all of what had happened and to take such steps as were necessary to bring this home to the judge. Such imprecision in asserting alleged error is destined to produce at the most only confusion as to what is in counsel's mind and what is desired of the court. We do not think a verdict justified on the evidence and by the trial generally should be upset when counsel have thus failed to make their criticisms of the judge clear

to him at the time. Under the circumstances the court's refusal to add to the original charge was not reversible error.

Affirmed.