BENJAMIN v. LEHIGH VALLEY R. CO.
Civ. No. 4128.

United States District Court
W. D. New York.
Feb. 21, 1950.

McElroy, Young & Mahley, Syracuse, N. Y. (Gordon Mahley, Syracuse, N. Y., of counsel), for plaintiff.

Kenefick, Cooke, Mitchell, Bass & Letchworth, Buffalo, N. Y. (Robert M. Hitchcock and William M. Fay, Buffalo, N. Y., of counsel), for defendant.

BURKE, District Judge.

██ Plaintiff, an employee of the defendant, has a verdict against the defendant for personal injuries. The action was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The defendant moves here, under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for judgment notwithstanding the verdict, and in the alternative for a new trial on the ground of alleged errors of the Court at the trial, and upon the ground that the verdict was contrary to law and to the weight of the evidence. I think now, as I thought at the conclusion of the evidence, that it was proper to deny defendant's motion for a directed verdict, in view of the unmistakable trend toward liberality in the interpretation of the Federal Employers' Liability Act and the policy of the United States Supreme Court of resolving differences in doubtful cases in favor of injured railroad employees as evidenced by decisions of that Court. Lilly v. Grand Trunk Western Ry. Co., 1943, 317 U.S. 481, 63 S. Ct. 347, 87 L.Ed. 411; Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Bailey v. Central Vermont Ry., 1943, 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Tennant v. Peoria & P. U. Ry. Co., 1944, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Tiller v. Atlantic Coast Line R. R. Co., 1945, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465; Blair v. Baltimore & Ohio R. Co., 1945, 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490; Wilkerson v. McCarthy, 1949, 336 U. S. 53, 69 S.Ct. 413. I therefore deny defendant's motion for judgment notwithstanding the verdict.

██ But defendant's alternative motion is based upon other considerations. The trial court may weigh the evidence, set aside a verdict and grant a new trial upon proper grounds, even though there was substantial evidence to prevent the direction of a verdict. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct.

189, 85 L.Ed. 147; Garrison v. United States, 4 Cir., 62 F.2d 41, 42; Roedegir v. Phillips, 4 Cir., 85 F.2d 995, 996; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 354; Marsh v. Illinois Central.R. Co., 5 Cir., 175 F.2d 498. It is no answer to a motion for a new trial to cite cases such as Tennant v. Peoria & P. U. Ry. Co., supra, and Lavendar v. Kurn, 327 U. S. 645, 66 S.Ct. 740, 90 L.Ed. 916, as authority for the proposition that questions of fact are for the jury's determination and not the court's. Such cases deal with the power of the court to direct a verdict. The direction of a verdict finally, as a matter of law, substitutes the determination of the court on questions of fact for that of a jury. The granting of a motion for a new trial does not, but merely requires that another jury determine the facts, for reasons which in the interest of justice are compelling.

When a new trial is ordered it should be done cautiously and prudently. It is proper, and helpful to the party whose verdict is upset, for the court to point out specifically the reasons for the court's action. See dissenting opinion in Galloway v. United States, 319 U.S. 372 at page 411, 63 S.Ct. 1077, at page 1097, 87 L.Ed. 1458, for the advantage to a losing party of knowing the specific grounds for ordering a new trial. I am not persuaded to set aside the verdict on the ground of alleged errors of the Court at the trial, but I think that the verdict was against the clear weight of the evidence.

Plaintiff's injuries arose, according to his claim, out of an occurrence of loading a keg of railroad spikes onto a truck which had been backed up to a railroad crossing. The proof rested solely on the testimony of the plaintiff himself, although according to his own testimony fourteen to sixteen fellow workmen were on the truck. No explanation was offered by the plaintiff why none of them were called as witnesses. The particular crossing where the alleged incident took place was indefinitely identified, although the plaintiff said he worked on it many times, but it was a farmer's crossing. A fellow workman named Felicita was helping plaintiff load the spikes onto the truck, according to the plaintiff's testimony.

He lived less than two miles from the plaintiff. He is no longer employed by the railroad. He was not called as a witness by the plaintiff, but he was called by the railroad. He remembered riding on the truck the morning of the alleged occurrence but denied that any kegs of spikes were loaded onto the truck by the plaintiff or by anyone else. On the evening of June 30th, 1948, the date of the alleged occurrence, plaintiff went to the Robert Packer hospital in Sayre, Pennsylvania, where he lives, to get relief from pain in his back. He was examined by Doctor Johnson who made a written report of what was told to him by the plaintiff. The doctor reported that the plaintiff said he was shoveling and using an iron bar when he noticed a severe pain in his low back region. The time was given as 10:30 A. M. June 30th, 1948. On July 2nd, 1948, while in the hospital for treatment, his history was taken by Doctor Potter and reduced to writing. The written report showed that the patient said his injury occurred while he was shoveling stones and a sharp pain caught him in the low back. Neither of these doctors had any connection with the railroad. The plaintiff made a written statement to the railroad claim agent on July 14th, 1948 to the effect that on June 30th, 1948 he, with Holmes a fellow workman, was engaged in tamping stone under railroad ties and that about 11 A. M. a sudden pain caught him in the lower part of his back. In his testimony at the trial he fixed the alleged occurrence of loading the spikes shortly after 7:00 A. M. On July 15th, 1948, while at home with his wife, plaintiff, in his own handwriting, made an application to the Benefit Association of Railroad Employees, an insurance company having no connection with the railroad. He there fixed the date and hour of the accident at 11 A. M. on June 30th, 1948, and in answer to written questions as to how he was hurt and what he was doing he wrote "shoveling stone and tamping them under ties." Holmes, no longer employed by the railroad, said that he worked with the plaintiff all of the morning of June 30th, 1948, tamping stone and that no mention was made by the plaintiff of any injury until nearly noon when he

complained of a stitch in his back. Rorick was the plaintiff's foreman. He testified that he was present at the Yellow House crossing on June 30th, 1948 prior to the time the truck arrived. He said the truck could not, and did not, approach within several hundred feet of the track because of obstructions. He said that the plaintiff made no complaint of any kind to him that morning until about 10:30 A. M. Plaintiff had been shovel tamping with Holmes for several hours when he told Rorick that he had a stitch in his back. Rorick made a report stating that plaintiff was shovel tamping with Holmes and that he told Rorick about 10:30 A.M. that he had a stitch in his back. The report stated that Rorick asked him what caused it and that the plaintiff said he did not know. Pryslopski was the truck driver employed by the railroad who drove the men to work. He had no recollection of this particular date but did remember that in the summer of 1948 he had driven the men and let them out four or five times at the Yellow House crossing. He said that he never drove the truck to the tracks because of obstructions but let the men out at the barn, which was about 300' to 350' from the tracks. He denied ever giving any orders to the plaintiff or any one else to load railroad spikes onto the truck and said that he never hauled railroad spikes when men were riding on the truck. As has been noted, the crossing where the alleged incident of loading the spikes took place, was indefinitely identified by the plaintiff. It could not have been Campton crossing, the next crossing to Yellow House toward the west, for that was a public crossing with a macadam pavement (there is confusion in the testimony regarding directions, arising probably because railroad directions in this locality do not coincide with compass directions). The next crossing to Yellow House to the east was Norris crossing, a farm crossing, but the truck driver testified that this crossing was 1000' from the road and was protected by a gate, and that the truck never went closer than 30' from the tracks and never went through the gate. No testimony was offered by the plaintiff to rebut defendant's

evidence that a truck could not approach closer to the tracks at Yellow House crossing than 300', nor was the indefiniteness of the crossing where the alleged incident took place ever cleared up by the testimony. No testimony was offered to rebut the testimony of the truck driver that there was a gate at Norris crossing and that the truck never went through the gate.

The witness Jessey was called by the plaintiff to discredit the testimony of Felicita. Jessey, an employee of another railroad and a member of the Railroad Brotherhood, was used on occasions by plaintiff's attorneys for investigation of claims. He went to Sayre in February, 1949. He interviewed Felicita on the street. He took no written statement. His testimony was unsatisfactory and unconvincing. He said Felicita remembered having helped Benjamin lift a keg of spikes onto a truck, and that he complained as he was pushing those spikes on the truck about a kink in his back, and that he had to quit work. When asked in regard to what time it occurred, he said that Felicita told him it happened before lunch. Then the witness said, "As I recall it, it happened before lunch and after he got this kink in his back he went over and laid down in the car." Then the question was asked, "Right away?" and the answer was, "Right away." This version of the accident is neither in accord with Felicita's testimony nor Benjamin's, and it is a fair inference that it was the result of superficial and inadequate investigation of the details. Although the witness had been sent to investigate the circumstances of the occurrence, he said that he did not ask Felicita where the incident took place, but that Felicita said it was out of town a short ways.

■ Outside of plaintiff's own testimony, which is discredited by his own statements in writing and by admissions made shortly after the alleged occurrence to disinterested persons, all the testimony tends to establish that plaintiff's injuries came about late in the morning of June 30th, 1948, while he was tamping stone under railroad ties. Considering the testimony as a whole the verdict of the jury is not supported by the

evidence and is contrary to the clear weight of the evidence. In the exercise of discretion and to prevent a miscarriage of justice the defendant's motion to set aside the verdict and for a new trial is granted.