FRIZZELL v. WABASH R. CO.
No. 14534.

United States Court of Appeals
Eighth Circuit.

Oct. 15, 1952.

Rehearing Denied Nov. 5, 1952.

Robert L. Robertson and Fred J. Freel, Kansas City, Mo., for appellant.

David R. Hardy, Kansas City, Mo. (J. H. Miller, St. Louis, Mo., John S. Marley, Sam B. Sebree, and Sebree, Shook, Hardy & Ottman, Kansas City, Mo., on the brief), for appellee.

Before SANBORN, RIDDICK, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The plaintiff-appellant appeals from a judgment entered upon a directed verdict for defendant in an action for damages for personal injuries brought under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq. The cause of action is predicated upon the alleged negligence of the defendant railroad company:

1. In furnishing and maintaining setoffs with insufficient space for parking work cars used by crews of section hands working on the roadbed;

2. In furnishing plaintiff an unsafe place in which to work, where the footing was insecure, causing plaintiff to slip in the act of assisting in the placing of a work car or push car back on the rails;

3. In furnishing plaintiff insufficient help with which to perform the task assigned to him, in that defendant assigned to plaintiff as section foreman only three men, which number was insufficient to handle work cars in removing them from and replacing them on the rails, without undue physical exertion and injury to the workmen.

Plaintiff was employed by defendant as a section foreman on April 12, 1949, and had been a section foreman for approximately a year and a half. On April 12, he and three section hands were engaged in replacing old ties with new ones on the roadbed of defendant about three miles northwest of Shenandoah, Iowa. He had been engaged in that work practically continuously in that neighborhood for about three weeks. He was entirely familiar with the work and experienced in it, having been employed in that type of work by defendant for 25 years. The work required the use of a motor car and a push car. Setoffs were customarily, and in this instance actually, constructed at intervals of about one-half mile. They consisted of planks so placed at right angles to the rails and on the right-of-way along the side of the tracks that cars of the type in question could be run off on them when it was necessary to remove the cars to permit the passing of trains. These setoffs were long enough to accommodate only one motor car or push car. On the day plaintiff was injured, both a motor car and push car were being used. As was customary, he and his crew went out to the place they were to work that day with both cars. They parked the motor car on a setoff and used the push car in their work, leaving it on the rails. This was not the main line of the railroad, and since no trains were to pass during the morning, it was unnecessary to remove the push car from the rails until lunchtime. It was the rule of defendant that all such cars had to be removed from the rails during the lunch period. When that time came, plaintiff and his crew were working near the setoff where the motor car was parked. The opposite side of the track from that setoff was selected by plaintiff as the appropriate and most convenient place to park the push car during the lunch period.[1] At his direction it was parked on the right-

---

[1] Plaintiff's testimony was that it was the best place within a quarter of a mile in either direction and that it was about one-half mile to another setoff.

of-way at that point and seven feet from the closest rail, as the company rules required. The roadbed was ballasted with cinders between and for a short distance on each side of the rails. The remainder of the space used for parking the push car was dirt. Such was the ordinary construction of defendant's roadbed. At the point in question and for some distance in either direction, with one exception, the roadbed was on an embankment with shoulders having a steep grade estimated at 28 per cent. A short distance from that point there was a somewhat more level space where the push car could have been placed. The push car weighed from 500 to 700 pounds. It was removed without incident. But when the four men undertook to place it back on the rails at one o'clock, plaintiff was straining and lifting and just as it was about to go on the rails, his left foot slipped in a depression in the cinder ballasting, he had a severe "stabbing" pain in his left arm and chest, he went down on his right knee and momentarily "blacked out". His head cleared shortly, and he says he does not know that the other workmen even noticed his physical condition, although he told one of them of it soon thereafter and about an hour afterwards mentioned it to another one of the three. He stayed on the job during the afternoon but was not able to do much. That evening after work he went to his room and after a time went to sleep. He awoke about nine o'clock that evening with very severe pain in the chest and his arm. Upon consultation with the company doctor by telephone, the doctor directed him to go to the hospital at once as his trouble was his heart. He did so and the preliminary diagnosis was confirmed. He stayed in that and other hospitals for a number of weeks and was upon his discharge pronounced physically incapacitated for work of that kind, and retired. He was still not well at the time of the trial, and the evidence tended to establish the fact that he was permanently disabled from performing manual labor, which alone he was qualified to do. In January, 1947, he had trouble with his heart and was off from work for some time. It appeared, however, that his trouble at that time was a comparatively mild attack of angina pectoris and he returned to work. At that time his doctor wrote a letter to the company hospital advising that plaintiff should not be assigned to work requiring heavy exertion. Upon his return to work he was first assigned to the type of work he had previously done, but in August was made a foreman. His duties as foreman required him to participate in all kinds of work done by those under him. His present disqualification results from a coronary occlusion which his expert medical testimony indicates was precipitated by his strenuous exertion on April 12, 1949. The trial court determined that the evidence furnished no basis for a finding of negligence on the part of defendant. Plaintiff's contention that it does is based upon the premise—sound if factually correct—that if on the evidence reasonable minds might differ on the question of whether defendant had been negligent in either of the three respects above stated, the determination of defendant's negligence must be left to the jury. Louisville & N. R. Co. v. Botts, 8 Cir., 173 F.2d 164. Plaintiff insists that such a situation was presented as to each assignment of negligence.

The custom of providing setoffs at intervals of every half mile is not conclusive as to their adequacy in number and distance apart. For, as stated in Urie v. Thompson, 337 U.S. 163, 178, 69 S.Ct. 1018 1028, 93 L.Ed. 1282:

> "* * * negligence, within the meaning of the Federal Employers' Liability Act, attached if respondent 'knew, or by exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees."

And, in Andrews v. Atchison, T. & S. F. R. Co., 333 U.S. 821, 68 S.Ct. 854, 855, 92 L.Ed. 1108, the failure to do "what 'a reasonable and prudent man would ordinarily have done under the circumstances of the situation'" will constitute negligence.

Plaintiff does not base his charge of inadequacy of setoffs upon the premise that they were too far apart, but, as heretofore

noted, that charge is based upon the premise that it was negligence for the setoffs to be so constructed that they would accommodate only one car, or if two-car setoffs were not constructed it was negligence not to have another one-car setoff directly across the rails from those which were there, in order to thereby accommodate two cars. Therefore, if there was negligence in failing to furnish sufficient setoffs, such negligence must be predicated upon the hypothesis that defendant should have contemplated a reasonable necessity that two cars be removed from the tracks at the same location. Otherwise stated, unless the defendant should, in the exercise of reasonable care in view of the character of the work, the kind of equipment used, the number of trains operating on the tracks and all other circumstances, have known that it would be necessary to remove more than one of these work cars at one location, there could be no negligence in not having setoffs adequate for two cars. But we may assume, for present purposes at least, that the failure to furnish facilities for easily removing more than one car at each location would constitute sufficient grounds for a finding of negligence if the evidence justified a finding that defendant was chargeable with knowledge that it would be necessary to remove more than one car at one location. But to charge defendant with knowledge that it would be necessary or reasonably likely for more than one car to be removed from the rails at one location, it should appear that the defendant knew or should have known of some reasonable necessity or likelihood therefor. And although, as demonstrated in Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572, and Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497, even if plaintiff could have used a safe place to remove the push car but chose a hazardous one, defendant would not necessarily be thereby absolved from negligence but would still be negligent if there was a reasonable basis for the conclusion that defendant should have anticipated that plaintiff would, or might reasonably be expected to choose the hazardous location. To indulge the lat-

ter assumption, however, the surrounding circumstances should be such that a reasonably prudent person would do so. If, as in the Ellis case, the hazard was not so obvious as to preclude the possibility that plaintiff might not have realized it, there would be a basis for an assumption that plaintiff might use the location he selected. But there is no evidence here to justify such an assumption. There was nothing latent or concealed or not perfectly obvious to plaintiff about the terrain which could give rise to the assumption he would use it without adequate help. And to take that fact into consideration in determining the existence of any dereliction or negligence on defendant's part is not to say that plaintiff may not recover because of his own contributory negligence, when of course he can, but is merely to take such fact into consideration in determining whether there was any reasonable basis for concluding that defendant should have expected plaintiff to select that location for removing the push car. We do not disagree with Virginian Ry. Co. v. Viars, 4 Cir., 193 F.2d 547, 550, where it was said that under the circumstances of that case:

"If, however, plaintiff adopted a dangerous way of doing the work when a safe one was open to him, this amounted to nothing more than assumption of risk or contributory negligence, neither of which excuses defendant's negligence or bars recovery under the Federal Employers' Liability Act."

since the court went on to say that: "If plaintiff was guilty of negligence in using the dynamite, this did not bar him of recovery, if defendant was also guilty of negligence which contributed to his injury, but went merely to the reduction of damages." If in the case before us the defendant was negligent, the negligence of plaintiff in selecting a hazardous location would not relieve defendant of liability. See Terminal R. Ass'n of St. Louis v. Fitzjohn, 8 Cir., 165 F.2d 473, 1 A.L.R.2d 290.

We know of no rule of law that would require defendant to assume that workmen would not go a half mile to an

available empty setoff to take a push car off the tracks under circumstances here shown. Those circumstances were that the tracks were not the main line, only one or two trains passed over it a day during working hours, only one car was used in the work after the workmen arrived at the scene of the day's work, it was not difficult to push the push car along the rails (in fact, that was its ordinary use), and if the actual work of removing and replacing ties was, for a particular day, to be near a setoff no reason appears in the record why the motor car and push car could not have been stopped at another setoff, the motor car left there, and the push car pushed on to the location of that day's work near another setoff. There is no indication in the record that if that was done the setoffs furnished were not close enough together. Nor is there anything in this record to indicate that this would not have been a proper procedure to follow or that the defendant had any reason to assume that it would not be followed. Hence, we fail to find any factual basis for a finding that there was negligence in failing to furnish setoffs at half-mile intervals sufficient to accommodate more than one car.

This is not a case such as Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 1063, 87 L.Ed. 1444, where the employee was ordered to perform work at a particular location which could under the facts have been found to be an unsafe place to do that kind of work. Nor is it a case where under an emergency, which might arise if the push car was some distance from a setoff when a train approached, the particular location selected was the only one available under those circumstances. Or like Brown v. Western R. of Alabama, 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100, where the injured employee was required to cross over clinkers and debris left along the side of tracks. Or like Blair v. Baltimore & O. R. Co., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490, where an employee was ordered over his objection to carry a specified load that was too great for him and his helpers. Or as in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, where the facts justified either of two permissible inferences, one of which was consistent with the finding of negligence.

█ The third assignment of negligence, that adequate manpower was not furnished to handle the push car without undue exertion on the part of the workmen, must fall for the same reason. There is no indication from the record that undue exertion was required in removing the heavier motor car from the rails at the setoffs furnished or in replacing the motor car on the rails at those setoffs. There was no charge, or factual basis therefor, that the four men could not have removed and replaced the push car at one of the setoffs. Therefore, unless the facts and circumstances were such that the defendant should have anticipated the necessity for the four men removing the push car at a point where there was no setoff, there was no duty to furnish sufficient manpower to remove and replace the push car at a point where there was no setoff. Since as heretofore demonstrated we fail to find any reasonable basis for a finding that defendant should have anticipated a necessity for removing two cars at one location, there was likewise no justification for a finding that more than four men were needed in the work party.[2]

█ Plaintiff's second assignment of negligence, that defendant was negligent in furnishing him an unsafe place in which to work because the footing was insecure, causing him to slip in the act of assisting in placing the push car back on the rails, must assume as a predicate and premise that it was the duty of defendant, in the exercise of reasonable care, to keep the cinder ballasting on each side of the tracks and adjacent to the ends of the ties, smooth and even at all times and places, including the period of time when the ties were being removed and replaced. The test of negligence, as so well established and heretofore referred to at some length, is whether a reasonably prudent person, under the circumstances, would have done so. Ap-

2. Plaintiff testified that at level places such as a setoff two men could put a push car on the track.

plying the legal principle to the facts in this case—can it be said that defendant should have anticipated the necessity for plaintiff to be lifting a push car back on the rails at any and all points along its line, in view of the facts heretofore noted, and particularly the fact that this was not the main line and only one or two trains passed over it during the working hours? Can it be logically said that a reasonably careful and prudent person would assume that the normal indentations in cinder ballasting caused by normal rainfall would furnish a hazard to section hands accustomed, as they had to be, to walking along and over such ballasting? The rule of law is well established that the standard of care must be commensurate to the dangers of the business. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497. Or, as stated in Williams v. Atlantic Coast Line R. Co., 5 Cir., 190 F.2d 744, 747:

> "It is the duty of the employer to exercise reasonable care to furnish the employees with a safe place to work, but there are times when railroad employees must work in dangerous places to keep the trains moving. Then as the risk increases the duty becomes 'more imperative', 'Reasonable care becomes then, a demand of higher supremacy; and yet. in all cases it is a question of the reasonableness of the care; reasonableness depending upon the danger attending the place or the machinery.' Patton v. Texas & Pacific Ry. Co., 179 U.S. 658, 664, 21 S.Ct. 275, 278, 45 L.Ed. 361; Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 63 S.Ct. 1062, 87 L.Ed. 1444. The diligence required is commensurate with the dangers reasonably apprehended."

The rule, of course, works both ways. Less diligence will be required to constitute reasonable care where the danger is slight than would be required where the danger is great. We fail to find any reasonable grounds for the inference that the defendant was negligent merely because slight unevenness in the surface of the cinder ballasting was permitted to exist at such places as the location of plaintiff's injury

We find no error in the conclusion of the trial court upon which the judgment was based. The judgment should be and is affirmed.