**NEW YORK, N. H. & H. R. CO. v. ZERMANI.**

No. 4668.

United States Court of Appeals First Circuit.

Dec. 8, 1952.

Rehearing Denied Dec. 19, 1952.

Edmund J. Moore, Boston, Mass. (William Q. Keenan and Noel Deering, Boston, Mass., with him on the brief), for appellant.

John V. Higgins, New York City, (Thomas J. O'Neill, New York City, Joseph P. Coughlin, Cambridge, Mass., and O'Neill, Higgins & Latto, New York City, with him on the brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from judgments entered in the United States District Court for the District of Massachusetts on February 8, 1952, based upon jury verdicts in an action brought under the Federal Employers' Liability Act. 35 Stat. 65, as amended, 45 U.S.C.A. § 51 et seq.

The plaintiff sought recovery under 45 U.S.C.A. § 51, for damages suffered as the result of the death of her husband, John

T. Zermani, while employed as a brakeman by the defendant and under 45 U.S.C.A. § 59 for his conscious suffering. Zermani's injuries and death were alleged to have resulted from an accident which took place during a classification and switching operation in the defendant's railroad yard.

On February 6, 1952, the defendant's motion for a directed verdict was denied. On February 7, 1952, the jury returned a verdict for the plaintiff in the sum of $25,000 on the conscious suffering count and in the sum of $116,500 on the count for death. On February 28, 1952, the defendant's motion for a new trial was denied.

■ The facts are substantially as follows: On the morning of August 25, 1951, at about 4:45 a. m., a train and switching crew of the defendant, on which John T. Zermani, the plaintiff's husband, held the position of brakeman, was engaged in a train classification operation in the defendant's yard at Taunton, Massachusetts. The purpose of this operation was to break up a string of cars in order to leave some on track 1 and others on track 6, which was east of track 1. To do this it was necessary to move a part of this string of cars northward on track 1 past a switch leading to track 6, and thereafter to move some southward on track 6 and some others southward on track 1. Before the movement began, this string of cars and the engine coupled to it stood two car lengths southward from Danforth Street crossing, the engine being the most northwardly situated unit. This crossing was in turn 15 feet south of a switch leading from track 1 to a number of yard tracks, one of which was track 6. South of this crossing was the final switch which gave entry to track 6.

This classification operation was supervised by Francis A. McAloon, the yard conductor. After the automatic braking mechanisms had been released on the northernmost twenty-two cars on the string, they were hauled northward on track 1 until they had cleared the switch north of the Danforth Street crossing, which led from track 1 to the other yard tracks, including track 6.

Either prior to moving these twenty-two cars northward or immediately on having moved them, McAloon and Zermani released air pressure from the automatic brake reservoir tanks on the southernmost ten cars, an operation known as "bleeding", the effect of which was to release the automatic brakes on these cars and to render them mobile. The purpose of thus rendering the cars mobile was to enable Edwards, the engineer, by the impact of the locomotive, to cause the cars to roll southward after they had been uncoupled.

There is testimony that McAloon ordered William Howard, a brakeman on the defendant's train crew, to handle the cars rolling southward to track 1 and Zermani to handle the cars rolling southward to track 6. After the ten southernmost cars had been uncoupled, they were propelled southward by a locomotive and then allowed to continue their movement over the Danforth Street crossing on their own momentum. Zermani rode the first car to track 6 and brought it to a halt. Next Howard rode cars 2, 3, 4, and 5 to track 1 and brought them to a halt. These cars were stopped by use of the hand brake and they in turn were expected to stop all subsequent cars rolled southward on tracks 1 and 6.

When these five cars had stopped, car 6 was propelled southward uncoupled from the engine. It came to a stop at the Danforth Street crossing, short of its intended destination on track 6, but sufficiently southward of the northernmost switch leading from track 1 to permit a clear passage from north to south over the crossing on track 1. Meanwhile Zermani had walked northward along track 6 and reached the crossing after car 6 had stalled, presumably due to its being incompletely bled. Zermani began to bleed car 6, as cars 7, 8 and 9 were moving southward over the Danforth Street crossing on track 1, and McAloon shouted instructions to Zermani, he claims, in regard to the stalled car. As soon as car 9 cleared the crossing, Zermani ran around it to its west side and then turned to run in a southerly direction. Berube, the switchtender at the Danforth Street crossing at the time of the accident, testified that the position of Zermani's lan-

tern indicated that Zermani was at the ladder leading to the handbrake at the southerly end of the moving car 9 and that he then saw the light move up in the air. Zermani hollered. He was found conscious, severely injured, lying on the ground beside car 9. He died on August 31, 1951, as a result of the injuries he sustained.

Substantially the appellant relies upon the following points (1) that the court below erred in denying defendant's motion for a directed verdict; (2) that the charge to the jury was erroneous and prejudicial; (3) that the court erred in denying defendant's motion for a new trial on the ground that the amount of the verdict is excessive, and (4) that there was an erroneous and prejudicial evidentiary ruling on the issue of damages.

Considering all the evidence according to the stringent requirements delineating the functions of judge and jury in this type of case, we think there is a reasonable basis for the conclusion that negligence of the defendant caused harm for which defendant is liable and that there was sufficient evidence to submit to the jury the question of negligence posed by the complaint and developed by the evidence.

Appellant contends that each item of alleged negligence, taken separately, does not provide a reasonable basis for an inference of negligence which proximately caused Zermani's death. Although this may be true of the worn brakehead on the fatal car and of the failure to bleed completely car 6, yet the evidence taken as a whole does not support appellant's argument. The order of conductor McAloon, transmitted by yelling, as he pointed to Zermani during the course of a speedy switching operation at night in a noisy yard, is a sufficient basis for the inference which the jury made.

At the time McAloon pointed and shouted, the switching movement was in progress. It was night and dark. A string of three cars was rolling unattended at 12 to 15 miles per hour over the crossing where Zermani was standing. The engine was backing and pulling. The cars and couplings between the cars were moving, all necessarily creating a considerable amount of noise. Under these circumstances, McAloon pointed south toward the stalled car, the crossing, the three moving cars on track 1, which at the moment were just going over the crossing, and Zermani. Zermani, the stalled car on track 6 and the moving cars on track 1 were all close together. It would be difficult, if not impossible, to decide exactly whether McAloon was pointing at the car on track 6 or at the three moving cars. Since the part of the movement in progress was the three moving cars, it would be reasonable for Zermani to conclude that he was being given an order about them. This is especially so since the three cars were moving unattended at a speed of about 12 to 15 miles per hour which was not done as a rule, according to testimony.

From all this evidence the jury was justified in concluding that when McAloon pointed and yelled, Zermani understood he was ordering him to catch the cars on tracks 1 to ride them and apply the brake.

In Wilkerson v. McCarthy, 1948, 336 U.S. 53, 61, 69 S.Ct. 413, 417, 93 L.Ed. 497, the Supreme Court said:

"* * * But the issue of negligence is one for juries to determine according to their finding of whether an employer's conduct measures up to what a reasonable and prudent person would have done under the same circumstances. And a jury should hold a master 'liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances', bearing in mind that 'the standard of care must be commensurate to the dangers of the business.' Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610."

Furthermore, in Blair v. B. & O. R. Co., 1944, 323 U.S. 600, 602, 604, 65 S.Ct. 545, 546, 89 L.Ed. 490, the court said:

"To deprive railroad 'workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.' Bailey v. Central Ver-

mont R. Co., 319 U.S. 350, 354, 63 S. Ct. 1062, 1604, 87 L.Ed. 1444. * * *

* * * * * *

" * * * The duty of the employer 'becomes' "more imperative" as the risk increases.' Bailey v. Central Vermont R. Co., 319 U.S. 350, 352, 353, 63 S.Ct. 1062, 1063, 1064, 87 L.Ed. 1444. See also Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610. The negligence of the employer may be determined by viewing its conduct as a whole. Union Pacific R. Co. v. Hadley, 246 U.S. 330, 332, 333, 38 S.Ct. 318, 319, 62 L.Ed. 751. And especially is this true in a case such as this, where the several elements from which negligence might be inferred are so closely interwoven as to form a single pattern, and where each imparts character to the others."

See also Coray v. South Pacific Co., 1949, 335 U.S. 520, 524, 69 S.Ct. 275, 93 L.Ed. 208, and Lavender v. Kurn, 1946, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.

Applying these principles to the circumstances of this case, it seems to us that a jury would be warranted in inferring that the defendant was negligent in its supervision and conduct of this classification operation. Therefore, there was no error in denying defendant's motion for a directed verdict.

Appellant's next contention is that the trial court committed erroneous and prejudicial error in neglecting to charge the jury that defendant's negligence must have proximately caused the injury to plaintiff's husband in order for defendant to be liable. We cannot see how any insufficiency in the charge prejudiced the defendant.

The trial judge quoted the pertinent language of the Federal Employers' Liability Act. He also charged that: "The basis of this action is not that a man was injured, but that a man was injured by reason of the defendant's negligence. There is the basis of recovery. A railroad or any other employer is not an insurer, he is only liable if there is an act of negligence." The court also instructed the jury: "If you find that this man's death was brought about by the reason of the negligence of the railroad, then in assessing the damages * * *." At least two other references were made to negligence during the rather extensive charge to the jury.

Appellant seems to think that the charge was inadequate because it failed to delve into the intricacies of foreseeability and risk, which underlie the law of negligence and limit the scope of liability. It is true that some instructions to the jury with reference to proximate cause are necessary for adequate consideration of most negligence actions. Perhaps the omission was erroneous. However, appellant quite correctly does not contend that Zermani was not within the risk created by defendant's negligent supervision and conduct of the classification operation. As a matter of law, the one supervised would be endangered by negligent supervision. Appellant's claim that it was prejudiced because the jury failed to consider whether or not the defendant should have anticipated harm to Zermani is based on the erroneous assumption that appellant's negligence could only consist of specific items like the incomplete bleeding, the worn brakehead or the speed of the uncoupled cars. However, defendant's negligence consists in the conduct and supervision of the classification operation viewed as a whole, and certainly Zermani was the most likely person to be injured by such negligence. We perceive no prejudice to appellant in the charge which affects its substantial rights. Federal Rules of Civil Procedure, rule 61, 28 U.S.C.A.

Furthermore, it does not appear that Rule 51 of the Federal Rules of Civil Procedure has been complied with in presenting this error on appeal. Rule 51 states in part that: " * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *"

The record shows that after the court had completed charging the jury, at the

bench conference, the following colloquy occurred:

"Mr. Moore: On behalf of the defendant, I call attention to the fact that in describing negligence to the jury no mention was made that that negligence should be the proximate cause of the injury and I ask that the jury be instructed on that.

"The Court: I meant to say that.

"Mr. Moore: I also ask your Honor to charge request No. 8, which you have not.

"The Court: You can have that, exception. I said that negatively. Anything else?"

The reasonable interpretation of this exchange is that when the trial judge informed counsel that he "meant to say that", he was indicating that he believed his charge had covered adequately the issue of proximate cause. Counsel refrained from any response to this, but went on to his next objection without further comment. The purpose of Rule 51 is to require the parties to enable the trial court to "clarify or correct his statement before the jury retires." McDonald v. Jarka Corporation, 2 Cir., 1944, 144 F.2d 53, 54. See Williams v. Powers, 6 Cir., 1943, 135 F.2d 153; Alcaro v. Jean Jordeau, 3 Cir., 1943, 1.3 F.2d 767 and Blair v. Cullom, 2 Cir., 1948, 168 F.2d 622. Although defendant's counsel did not remain completely silent as in Alaska Pacific Salmon Co. v. Reynolds Metals Co., 2 Cir., 1947, 163 F.2d 643, 658, yet it does not appear that his objection was clearly stated. The language in Rosenfeld v. Curtis Pub. Co., 2 Cir., 1947, 163 F.2d 660, 663, seems appropriate here:

"* * * But it seems to us it was for counsel to realize that the judge had not recalled or repeated all of what had happened and to take such steps as were necessary to bring this home to the judge. Such imprecision in asserting alleged error is destined to produce at the most only confusion as to what is in counsel's mind and what is desired of the court. We do not think a verdict justified on the evidence and by the trial generally should be upset when counsel have thus failed to make their criticisms of the judge clear to him at the time. Under the circumstances the court's refusal to add to the original charge was not reversible error."

Appellant's other grounds of appeal are directed to the issue of damages. It is argued that a new trial should have been granted because the damages awarded are excessive and that the trial court erred in excluding some evidence on this issue, which defendant's counsel sought to elicit from an actuarial expert on cross-examination. We find no merit in these contentions.

■ The record does not convince us that the court abused its discretion in the denial of the motion for a new trial. McCoy v. Cate, 1 Cir., 1941, 117 F.2d 194. Appellant neither in its brief nor in its oral argument disputed the $25,000 which the jury awarded for Zermani's conscious suffering. Its only objection is to the $116,500 awarded on the second count. At the time of his death, Zermani was thirty-nine years old, in good health, a steady worker, the sole support of his family, and his earnings for the year prior to his accident were $5,406.56. He was survived by his thirty-one year old widow and five children. Four of the children were under four years of age when their father died, and another was born three months posthumously. Zermani's life expectancy was 30.10 years. We think that the damages awarded were not excessive from all the facts and circumstances disclosed in the record.

In Southern Ry.-Carolina Division v. Bennett, 1914, 233 U.S. 80, 87, 34 S.Ct. 566, 567, 58 L.Ed. 860, the Supreme Court said:

"* * * But a case of mere excess upon the evidence is a matter to be dealt with by the trial court. It does not present a question for re-examination here upon a writ of error. City of Lincoln v. Power, 151 U.S. 436, 14 S.Ct. 387, 38 L.Ed. 224; Herencia v. Guzman, 219 U.S. 44, 45, 31 S.Ct. 135, 55 L.Ed. 81, 82."

This rule has been consistently followed and the principle has been frequently repeated as in Fairmount Glass Works v. Coal Co., 1933, 287 U.S. 474, 481, 53 S.Ct. 252, 254, 77 L.Ed. 439, where the court said:

"The rule that this Court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact has been settled by a long and unbroken line of decisions; and has been frequently applied where the ground of the motion was that the damages awarded by the jury were excessive or were inadequate. The rule precludes likewise a review of such action by a Circuit Court of Appeals. * * *"

In St. Louis Southwestern Ry. Co. v. Ferguson, 8 Cir., 1950, 182 F.2d 949, 954, the court said:

"The final contention is that the verdict is so grossly excessive as evidently to have been the result of sympathy, passion and prejudice. We have said many times that the excessiveness or inadequacy of a verdict is not a question for our consideration, but that the entreaty for any such vice lies solely to the judgment and the conscience of the trial judge on motion for a new trial. This is because the amount of a verdict is primarily a factual evaluation on inabsolute elements, while our function traditionally has been regarded as extending only to a testing of the soundness of the processes by which such a result has been achieved."

The defendant cannot relitigate the issue of damages on this appeal, as it seeks to do. Nor do we perceive any reversible error in the trial court's ruling which limited the scope of appellant's cross-examination on the computations of expected future returns at various interest rates. " * * * Rulings on the admissibility of evidence must normally be left to the sound discretion of the trial judge in actions under the Federal Employers' Liability Act." Lavender v. Kurn, 1946, 327 U.S. 645, 654, 66 S.Ct. 740, 744, 90 L.Ed. 916. In the presentation of its own case the appellant did not offer to adduce evidence in this regard.

We find no merit in any of the grounds for reversal urged by appellant.

The judgment of the District Court is affirmed.